UNITED STATES BANKRUPTCY COURT
SOUTHER DISTRICT OF FLORIDA
MIAMI DIVISION

In Re:

Josue Cepero             CASE NO.: 17-20358-LMI
Leticia Cepero          CHAPTER 13

Debtors.

_____/

### HAMMOCKS COMMUNITY ASSOCIATION INC. AND ITS PRESIDENT MARGLLI GALLEGO'S RESPONSE TO DEBTORS' MOTION FOR CONTEMPT AND REQUEST FOR AN EVIDENTIARY HEARING

HAMMOCKS COMMUNITY ASSOCIATION INC. ("Creditor") and its President MARGLLI GALLEGO ("President"), by and through his undersigned counsel hereby respond and move this Honorable Court to deny JOSUE CEPERO and LETICIA CEPERO's (hereinafter referred to as "Debtors") Motion for Contempt for Failure to Abide by this Court's Agreed Order Dated December 6th, 2018 and Request for an Evidentiary Hearing ("Motion"), and states:

1. Defendant's Motion seeks to hold the Creditor and its President in Contempt of the December 6th 2019 Orders ("Orders"), for allegedly willfully violating the Court's Orders and is requesting sanctions and attorney's fees together with punitive damages against the President for the same violations.

2. However, all of Debtors allegations fail because they are prefaced on false facts that are completely contradictory to the police reports, eye witnesses of uninterested parties and pictures and videos that would be presented at any evidentiary hearing ordered by this Court, which is welcomed by the Creditor and the President.

3. Debtors are estopped from seeking an order for contempt of an order in which they themselves violated the Orders and willfully and maliciously sought out the President to instigate the very event they claim is in violation of the Orders.

4. Debtors facts stated in the Motion focus solely on the allegations that the President:

   a. confronted the Debtors by blocking their car with a condominium association vehicle while they were visiting another property in the Association,

   b. began yelling at the Debtors and called the police after blocking their car into a parking spot, and

   c. for passing out a form to the residents that included a reference to residents that were distributing letters with false statements to the residents of the community.

5. What Debtors failed to mention were all of the essential facts surrounding the circumstances of their presence at the President's home residence parking lot, and Debtors seeking out and instigating the confrontation they are now seeking redress for, and the fact that the evidence (pictures) from that day show how Debtors intent was to maliciously harm the President, including the following operative facts:

   a. On May 15th, 2019, the date of the confrontation, the President was driving home from picking up her child from school, when she noticed she was being followed by the Debtors.

   b. She noticed it was the Debtors because she saw them pass by her car near her to take pictures of her.

   c. She then noticed the Debtors started to follow her as she drove home.

    d. During the drive home, she felt harassed and in danger so she called the police while driving home, and the 911 operator remained on the phone until she arrived at her residential parking lot when she was informed by the 911 operator that police were on their way.

    e. The President also called the community security office and informed them of what was happening since she feared for her safety.

    f. When the President attempted to enter her residential parking, she was blocked by the Debtors and the 3rd party, Maria Alonso, the affiant who submitted a false affidavit and has perpetrated a fraud on this Court.

    g. Mrs. Alonso claims she was at the property to visit her friend, Gail Sharpe and deliver eggs, yet Ms. Sharpe appeared at the scene in her own vehicle in an effort to take pictures of the scene and intimidate the President.

    h. Ms. Sharpe then proceeded to hit the President with her vehicle as she left the scene abruptly prior to the police arriving.

    i. The President has documented that Mrs. Alonso and the Debtors have threatened the President on several occasions and she felt in danger for her life and health.

6. The Presidents Affidavit verifying these facts is attached hereto as Exhibit A.

7. The security guard who first arrived at the scene confirmed two vehicles were parked by the President's apartment and the Debtors vehicle was blocking the President from her parking space. See the Affidavit of Jorge Matus attached hereto as Exhibit B.

8. Mr. Matus also witnessed as Ms. Sharpe hit the President with her vehicle.

9. Other security personnel at the scene confirmed that Ms. Alonso who claims she was at the residence to visit Ms. Sharpe, did indeed have a basket full of eggs in her

passenger seat, and that there have been various reports of eggs being thrown in the community at workers, property and board officers. See affidavit of Marlo Urueta attached as Exhibit C.

10.  However, it is clear from the actions of the Debtors, Ms. Alonso and Ms. Sharpe herself, that the meeting at the residence was not deliver eggs to her friend, but rather to stalk the President so they could determine when she would be home, meet at her residence parking lot and vandalize the President's vehicle or residence with eggs.

11.  Pictures (some of which are attached hereto as composite Exhibit D) which shall be presented at an evidentiary hearing also show the Debtors trying to intimidate the President by presenting a copy of the letter evidencing the disparaging comments by the Debtors which were addressed in the letter presented by Debtors as evidence of violation of the Orders.

12.  The letter held by Debtors and being shown to others around the car specifically mention the President and is a direct violation of the Orders whereby Debtors are to refrain from communicating and confronting the President, are intentionally seeking her out, following her, drafting and distributing association matters involving the President to other residents.

13.  The Debtor and their cohorts stalking and attempt to harm the President failed because of the President's quick action in calling the police and security.

14.  As a consequence, and despite having an injunctive order placed on them to stay away from the President, the Debtor and their cohorts are trying to benefit from their own improprieties to give the perception that they are victims, and they take no responsibility for their intentional actions in seeking to intimidate, disparage, stalk and harm the President.

15. The Creditor and President gladly encourage an evidentiary hearing in which evidence will be presented showing the pictures and videos from the scene, a detailed explanation of the location showing that the Debtors and their cohorts had absolutely no need to be anywhere near the President and her residence, which also further confirms their intent, and the facts will show that the parties that violated the Orders and intentionally sought out the President with their ill intent are the Debtors, who should be found in contempt and who should be sanctioned for perpetuating a false narrative that is a fraud upon this Court.

**WHEREFORE**, Plaintiff respectfully request the Court enter an order denying Defendants Motion for Contempt, or in the alternative, order an evidentiary hearing in which to present the facts in controversy, and grant Creditor any other relief this Court may deem just and proper.

I hereby verify that I am admitted to the Bar of the United States District Court for the Southern District of Florida and am in compliance with the additional qualifications to practice in this Court set forth in Local Rule 2090-1(A).

Respectfully Submitted,

**MARIN ELJAIEK LOPEZ & MARTINEZ, P.L.**
ATTORNEYS FOR CREDITOR HAMMOCKS
COMMUNITY ASSOCIATION, INC.
2601 S. BAYSHORE DRIVE, 18TH FLOOR
COCONUT GROVE, FLORIDA 33133
TELEPHONE: (305) 444-5969
FACSIMILE: (305) 444-1939
EMAIL: CRODRIGUEZ@MELLAWYERS.COM

BY: /s/CARLOS F. RODRIGUEZ
CARLOS F. RODRIGUEZ, ESQ.
FLA. BAR. NO. 97655

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing was filed and provided by US First Class mail to Josue & Leticia Cepero, 9541 SW 148 Pl, Miami, FL 33196 and transmitted via ECF to Michael A. Frank, Esq., Nancy Neidich, Trustee, and Office of the US Trustee, on this 4th day of November, 2019.

By: /s/Carlos F. Rodriguez
Carlos F. Rodriguez

## AFFIDAVIT OF MARGLLI GALLEGO

Before the undersigned authority personally appeared **Marglli Gallego,** who being first duly sworn, deposes and says:

1. My full name is Marglli Gallego.

2. I am over the age of 18.

3. I currently live in Heron at the Hammocks located at 14921 SW 104 Street, #106, Miami, Florida 33196.

4. I am the president of Hammocks Community Master Association. We manage 42 communities including Heron at the Hammocks.

5. I was a prior Board of Director for Heron at the Hammocks. I served alongside with Maria Alonso, Gail Sharpe, Ida Suarez, Roberta Winokur from 2017 to 2019.

6. Hammocks Community Association has power and authority over Heron at the Hammocks.

7. On May 15, 2019, the same day I had a Court Order to present evidence showing that Maria Alonso did not initiate elections for Heron on May 10, 2019, I was followed from the school my son attends, Herbert Ammons Magnet School located at 17990 SW 142 Ave, Miami, Florida 33177. The school is located seven miles from my residence.

8. When I got out of my vehicle to pick my child up at 4:09 P.M. in front of the school entrance, a Honda Civic passed by me taking photographs. The occupants of the vehicle were Leticia and Josue Cepero. This information



can be confirmed with the school security system.

9. After picking my son up, I began my way back to my house and noticed that the same Honda Accord driven by the Cepero's was still following me. I made various turns to verify their intent, and they made the same turns confirming my suspicion that they were following me.

10. I called 911 and was asked by the operator if it was an emergency. I told her that I was being followed. I was transferred to a new line and the operator began asking my name, where I was, and where I was heading. I told her I was already arriving to my house, and she asked me for my address. I explained to the operator that I was being followed from the school by the Honda Accord. She told me that an officer was dispatched to my home address and to remain on the phone with her. She asked if I could see the vehicle's license plate and if possible, to provide it to her, to which I did.

11. At no point did I contact Leticia Cepero or Josue Cepero.

12. I took photos of their vehicle with my son's cell phone as I maintained contact with the 911 operator.

13. I gave the operator the license plate number of the Golden Vehicle, which was operated by Maria Alonso since she blocked my vehicle from the right as Leticia and Josue Cepero blocked me from the left. My neighbor and Board director Judith Espejo took my son from my vehicle and took him inside the Hammocks Office.

14. At this point the operator informed me that the officer was arriving, therefore I hung up.

15. Marlon Urueta and Jorge Matus arrived before the Police, at the same time Gail Sharpe in her car arrived at the scene. I took photographs of her

2

and her vehicle's license plate. At this point as she was leaving, she hit me with her vehicle on my knees and quickly fled as the Police were arriving.

16. When the Police arrived, I informed them I was the individual who got in contact with 911 and the individuals on the scene were following me from my son's school.

17. I explained to the officer that they did not live in this property and I was trying to pass through the entrance in order to get to my house, but they blocked my path.

18. I continued to explain to the officer that in various occasions, Leticia and Josue Cepero have verbally assaulted me and threatened me. Likewise, Maria Alonso passed by my house several times and she said she would kill me, in addition my husband's vehicle has been stolen, and my vehicle's tires have been slashed. I placed cameras outside my home but Maria Alonso and Heron's attorney Reynaldo Castellanos, came and took the cameras down.

19. I currently have an active case against Gail Sharpe because she attacked me during a board meeting and hit me with her cell phone.

20. Leticia Cepero had in her hands a flyer which they were distributing to all unit owners stating that I was committing fraud.

_____
MARGLLI GALLEGO

STATE OF FLORIDA

        ss

COUNTY OF DADE

Sworn to and subscribed before me on October ___31___, 2019, by _Marglli Gallego_ who

3

produced _drivers license_ as identification. 6420-540-81-365-0

Notary Public – State of Florida

Notary Seal

MARIUSKA BRITO
MY COMMISSION # GG110935
EXPIRES June 11, 2021

## AFFIDAVIT OF JORGE MATUS

Before the undersigned authority personally appeared **Jorge Matus,** who being first duly sworn, deposes and says:

1. My full name is Jorge Matus.

2. I am over the Age of 18.

3. I am employed as a security guard for Hammocks Community.

4. I received a call about a situation developing within the Hammocks Community and immediately arrived at the scene.

5. Upon my arrival, I observed two vehicles parked by Marglli Gallego's apartment.

6. The first vehicle was occupied by Josue Cepero and Leticia Cepero.

7. The second vehicle was occupied by Marglli Gallego.

8. Marglli Gallego's vehicle was in a position that indicated that she was trying to park her vehicle in her designated parking space and Josue Cepero and Leticia Cepero's vehicle was blocking her from parking.

9. I observed a female resident, telling Marglli Gallego that her son was now safe because she took the kid away from the scene to prevent anything from happening to him.

10. Marglli Gallego then began asking Cepero why they were following her.

11. Another resident, who was in a 4 door sedan, Maria Alonso began yelling at Marglli Gallego. Almost simultaneously another individual arrived in her

1



vehicle. I was later told her name is Gail Sharpe.

12. Marglli Gallego began asking why they were recording her and this is when Gail Sharpe, the last vehicle to arrive on the scene, drove her vehicle into Marglli Gallego causing injury.

13. The Police arrived soon after and immediately made contact with the Ceperos. Marglli Gallego approached them and said that she was the person who called the Police because she was being followed by the Ceperos.

14. The Police officers did not wish to speak to me nor to Marglli Gallego regarding this incident.

15. The officers never asked for Gail Sharpe's license or registration even after I told them that I saw her strike Marglli Gallego with her vehicle.

*JORGE MATUS*

STATE OF FLORIDA

ss

COUNTY OF DADE

Sworn to and subscribed before me on October  31 , 2019, by  Jorge Matus  who produced  drivers License  as identification.  M326-420-76-105-0

Notary Public - State of Florida

Notary Seal 

MARIUSKA BRITO
MY COMMISSION # GG110935
EXPIRES: June 11, 2021

2

## AFFIDAVIT OF MARLO URUETA

Before the undersigned authority personally appeared **Marlo Urueta**, who being first duly sworn, deposes and says:

1. My full name is Marlo Urueta.

2. I am over the Age of 18.

3. I am employed as security guard for Hammocks Community Association.

4. I was called to the scene by my supervisor Matus who was already on site responding to an incident.

5. When I arrived, I observed a vehicle occupied by Josue Cepero and Leticia Cepero, located in front of Marglli Gallego's apartment.

6. I recognize Josue Cepero and Leticia Cepero as homeowners from Pelican Point.

7. The vehicle was in front of Marglli Gallego's apartment facing Marglli Gallego's vehicle.

8. Maria Alonso was in her 4-door gold vehicle and she began yelling at Marglli Gallego who was also already present on the scene. I saw a basket full of eggs in Maria Alonso's passenger seat. This got my attention as we have reports of eggs being thrown in the community at workers, property, board officer, etc.

9. We called the Police. Gail Sharpe who is also a member of the community arrived and we observed Gail Sharpe drive her vehicle into Marglli Gallego.

1



10. The Police arrived and made initial contact with the Ceperos and then with Maria Alonso.

11. Afterward we informed the officer that Marglli Gallego was the complainant that initially contacted the Police.

12. The officers were denying our statements and telling us it wasn't true.

13. The officers failed to ask Gail Sharpe for her license or any vehicle information even after we informed the officers that Gail Sharpe had struck Marglli Gallego with her vehicle. But the officers said that Marglli Gallego was in the way

14. Marglli Gallego had visible bruises in her legs.

_____
MARLO URUETA
STATE OF FLORIDA

ss

COUNTY OF DADE

Sworn to and subscribed before me on October 31, 2019, by Marlo Urueta who produced drivers license as identification. J630-54-64-132-0

_____
Notary Public – State of Florida

Notary Seal     MARIUSKA BRITO
                MY COMMISSION # GG110935
                EXPIRES June 11, 2021

2







