

# USTAC, INC.
## US THREAT ASSESSMENT CONSULTANT, INC.

Agency A1300253

Investigations • Threat Assessment • Dignitary Protection

Tel: 786.301.4863 • E-mail: oliviatrigo@ustacinc.com
www.ustacinc.com

June 27, 2019

This investigator was retained by the law office of Ricardo Gomez to conduct an investigation in preparation for defense of civil injunction.

On May 15, 2019, an incident occurred at 14921 SW 104th Street, which was documented under Miami-Dade Police Department Case No: PD190515174168 (exhibit A). As a result of said incident, injunctions were petitioned under cases **#2019-011649-FC-04 & 2019-011650-FC-04** (exhibit B).

On May 24, 2019, this investigator met with Josue & Letica Cepero and the Ceperos gave statements as to what had occurred on May 15, 2019 and provided this investigator with video evidence of the incident.

4:17 p.m. -    The Ceperos are at the at the Wells Fargo Bank at 137 Ave SW 88 Street. They have a receipt from the bank with date and time.  They drive from the bank to the Heron at the Hammocks Condominium to meet with Mrs. Maria Alonso, who is the president of Heron at the Hammocks Condominium Association, Inc. ("Heron Community").

They parked their vehicle in a guest parking space across from Building 16 facing south (SW 104 Street) to wait for Mrs. Alonso. Suddenly they notice that Ms. Marglli Gallego, who was driving a vehicle belonging to Hammocks Community Association ("Hammocks Master") had stopped behind them and was blocking their vehicle. Ms. Gallego's vehicle was facing east. This scared the Ceperos and they became extremely worried that Ms. Gallego was coming to do something to them, since Ms. Gallego has a stay away order that was signed by a federal judge and which ordered Ms. Gallego to stay away from the Ceperos and Ms. Gallego was wantonly disregarding the judge's order.  The Ceperos never exited their vehicle

ATTORNEY – WORK PRODUCT

Mr. Cepero was able to back out of the parking space because no vehicle was parked to his left. In his hurry he drove westbound trying to escape Ms. Gallego. This situation had him confused and kept driving all the way to the end until he had to turn right to try to get away. By then, Ms. Gallego had turned her vehicle around and commenced chasing the Ceperos' vehicle. In that time. Ms. Gallego also summoned two Hammocks security personnel vehicles (Marlo Urueta and Jorge Matos) to come assist her in corralling and trapping the Ceperos. As Mr. Cepero tried to leave the driveway he had taken to get out of the Heron Community Ms. Gallego drove up to the other end of that driveway ahead of him and cut him off with her vehicle. One of the Hammocks security personnel vehicle stopped in the middle of the driveway behind Mr. Cepero and the other stopped a bit further back. Ms. Gallego's vehicle and the two Hammocks security personnel vehicles had the Ceperos' trapped and unable to flee in their vehicle.

Ms. Gallego got out of her vehicle and approached the driver's side window of the Cepero's vehicle. Mr. Cepero did not get out of his vehicle but did press the federal judge's stay away order against the window so Ms. Gallego could see it and told her that she was violating the judge's order. Ms. Gallego acted like she did not care about the order. Ms. Gallego started yelling at Mr. Cepero to "pay", "pay" and continued to harass the Ceperos and circling the Ceperos' vehicle and filming them sitting in their vehicle. Ms. Gallego did all of this with total disregard for the stay away order against her which also ordered her to have no contact with the Ceperos. She kept urging Mrs. Cepero to call the police.

Even though Ms. Gallego is the president of the Hammocks Master, she is nothing at the Heron Community and has no power or authority to act within the grounds of the Heron Community in this or any way.

The Ceperos did call the police at 4:30 p.m. Since they were still at the bank at 4:17 p.m., this means that they drove from the bank to the Heron Community, parked next to Building 16, were blocked in by Ms. Gallego, escaped and tried to get away, were corralled by Ms. Gallego and the other two Hammocks security personnel down the road in the driveway, Ms. Gallego got out of her vehicle to harass the Ceperos who had still not gotten out of their vehicle, all in under 13 minutes.

However, in the statements Ms. Gallego made to the MD Police for the injunction cases she filed against Josue Cepero and Mrs. Alonso, which are related to this incident, she told the police that she was the one being followed and stalked by the Ceperos. Among the video evidence the Ceperos presented this investigator a date and time stamped receipt from Wells Fargo Bank showing that immediately prior to this incident they had been at the Wells Fargo Bank that is located at 137 Ave. SW 88 Street, which contradicts Ms. Gallego's sworn statements to MD Police. **See copy of bank receipt** (exhibit C).

*Furthermore, the Cepero's have no knowledge what school her children attended.* ←What is the purpose of this statement? Set some context for it somehow right before it.

The Cepero's provided this investigator with the video of Ms. Gallego and the Hammocks security vehicles driving and blocking the Ceperos and telling Ms. Cepero to call 911. The

2
ATTORNEY – WORK PRODUCT

video ends when the Ceperos hang up to be able to call the police. The Ceperos were granted a stay away order against Ms. Gallego by a federal judge on December 6, 2018, of which Ms. Gallego was aware and which orders Ms. Gallego to stay away and have no contact with the Ceperos. ***See copy of Federal Order*** *(Exhibit D)*

***See attached DVD Provided by this investigator***

On June 7, 2019, this investigator met with Mrs. Alonso who provided a statement detailing the following information regarding the incident of May 15, 2019. Mrs. Alonso had recently won the elections at the Heron Community and in the process beaten Ms. Gallego. Ms. Gallego has not taken her defeat by Mrs. Alonso well and has since commenced to harass Mrs. Alonso at every opportunity. Mrs. Alonso also owns four units at the Heron Community and, therefore, has four tenants she deals with on a continuing basis.

On May 15, 2019, Mrs. Alonso went to the Heron Community to deliver a basket of eggs to Ms. Gail Sharp, who resides at 14859 SW 104 Street, Building 18, Apt. 103, who is also the secretary at the Heron Community, and also to her tenant Ms. Rosa Lopez, who resides in Building 3, Apt. 201. While at the Heron Community, Mrs. Alonso was also scheduled to meet up with the Cepero's at one of her rental apartments. This investigator asked Mrs. Alonso why she had a basket of eggs in her vehicle. Mrs. Alonso stated that her sister lives on a 5-acre property in Davie, Florida where she raises chickens and her sister is always giving Mrs. Alonso eggs. Sometimes Mrs. Alonso is given to many eggs which she goes around giving to her friends and tenants, like Ms. Sharp and Ms. Lopez.

While Mrs. Alonso was speaking to Ms. Sharp, Ms. Alonso received a call from Ms. Cepero that Ms. Gallego was blocking her and her husband in and keeping them from leaving the Heron Community and that they were afraid of getting out of their car. Mrs. Alonso and Ms. Sharp got into their own vehicles and went to where the Cepero's where being detained by Ms. Gallego and Hammocks security personnel. Mrs. Alonso and Ms. Sharp witnessed Ms. Gallego and Hammocks security personnel detaining the Cepero's and the Cepero's in inside their vehicle unable to freely leave the Heron Community. Mrs. Alonso witnessed the Cepero's holding a paper to the window and showing it to Ms. Gallego, who was standing outside their vehicle. That paper was the stay away order against Ms. Gallego signed by the federal judge which prohibited Ms. Gallego from contacting or approaching the Ceperos. ***See copy of Federal Order*** *(Exhibit D)*.

When Ms. Gallego noticed that Mrs. Alonso had gone to see what was going on and was in her car observing what was still going on, Ms. Gallego directed her attention towards Mrs. Alonso and commenced verbally attacking her.
[Explain why this is not how Ms. Gallego explained it when she gave her statement to the police.]

In her [what motion???], Ms. Gallego alleges that while picking up her son from school she noticed she was being followed by two vehicles. She stated that she drove home and that the vehicles continued to follow her. [Does it state a date and time? Is it related in any way

3
ATTORNEY – WORK PRODUCT

to the May 15, 2019 incident?] Mrs. Alonso categorically denies this allegation and she has no knowledge of what school Ms. Gallego's children attend.

Ms. Sharp also took video of the Cepero's vehicle being blocked in by Ms. Gallego and Hammocks security personnel and showing how they had the Ceperos detained. In the video, you can see Ms. Gallego arguing with the Cepero's and the Cepero's still in their vehicle unable to move and in fear for their safety as she yells and Hammocks security personnel keeps them from leaving.

The video also shows Ms. Gallego videotaping the Cepero's. Then the moment Ms. Gallego noticed that Ms. Sharp was driving up videotaping her Ms. Gallego walks up to Ms. Sharp's vehicle and places her cell phone on the window of Ms. Sharp's vehicle. Ms. Gallego is also seen walking to the back of Ms. Sharp's vehicle and you can hear what sounds like Ms. Gallego hitting or kicking Ms. Sharp's vehicle. Next you can see Ms. Gallego continue walking around Ms. Sharp's vehicles until she is standing in front of her vehicle blocking it so that Ms. Sharp cannot drive away without hitting Ms. Gallego. That's when Ms. Gallego uses her fist to hit the hood of Ms. Sharp's vehicle and starts bumping into the front of the vehicle with her thighs and knees. Ms. Gallego kept urging Ms. Sharp to hit her with the vehicle. Even though Ms. Sharp was attempting to drive away Ms. Gallego would not move out of the way and, instead, kept on preventing Ms. Sharp from leaving. Ms. Gallego finally moved out of the way and allowed Ms. Sharp to leave.

***See video DVD provided by this investigator.***

On May 21, 2019, Ms. Gallego filed a temporary injunction against Mrs. Alonso for protection against stalking violence, as if it was Mrs. Alonso who was the one verbally attacking her and following her around. The Heron Community. The truth is that Mrs. Alonso is president of the Heron Community, owns four apartments in the community and visits the community frequently to meet with board members, visit friends, collect rent payments and oversee the Heron Community.

On the police report [**what police report**?], Officer Cobo states that Ms. Gallego has no injuries. In her temporary injunction, Ms. Gallego alleges injuries and provides photos of her purported injuries which, based on the timeline, were taken on May 21, 2019, and not on the date that they were supposedly sustained.

Mrs. Alonso believes that many if not all the Hammocks security vehicles are equipped with a GPS and a camera. Ms. Gallego also drives around the Hammocks and the other communities in the vehicles that are part of the Hammocks security fleet and, on May 15, 2019, she was driving around in one of those vehicles.

It is believed that Ms. Gallego can track and see where the Hammocks security vehicles are at all times. Ms. Alonso has also sent emails to Detective Booty providing information on the location of cameras at one of the apartments that face the parking lot which could have captured the event.

4
ATTORNEY – WORK PRODUCT

This investigator has downloaded Google maps images of the Heron Community and where the Cepero's were being blocked in and detained by Ms. Gallego and Hammocks security personnel to prevent them from leaving. Also, this investigator has requested BWC as well as the 911 and CAD report showing when the call came in and who contacted the police and how long police took to arrive at the scene. Once this is released to this investigator, this investigator will provide it to you. **See attachment map from Google Earth** (exhibit E)

### *Evidence Provided*

*Police Incident Report PD-190515174168.*
*A copy of the Injunction is provided as evidence to the allegations.*
*A copy of bank Receipt of Mr. Cepero time stamp being at the bank at the time she alleged.*
*Federal Stay Order*
*Google Earth Map*
*Video of incident provided to Attorney*

### PRELIMANARY INVESTIGATION CONCLUSIONS

Josue and Leticia Cepero were unlawfully stopped by Ms. Gallegos and Hammocks security personnel who intentionally confined and restrained them from leaving and had no **lawful authority to do so.**

The Heron Community does not contract with the Hammocks Community Association for security services and the actions taken by are not authorized.

Video evidence clearly conflicts with the allegations made under oath to obtain injunctions. Ms. Marglli possibly has perjured herself in provided statement to the courts to obtain an injunction for protection.

Sincerely,

Oliva Trigo
Private Investigator C16-00388

5
ATTORNEY – WORK PRODUCT