Page 265

1              UNITED STATES BANKRUPTCY COURT
                SOUTHERN DISTRICT OF FLORIDA
2

3                            Case No.:  17-20358-LMI
                             Chapter 13
4

In Re:
5

JOSUE CEPERO and LETICIA CEPERO,
6

        Debtors.
7    _____/

8

9

10                         VOLUME III

11                      CONTINUED TRIAL

12                  ECF # 199, 267, 289, 310

13                    February 12, 2021

14

15

16           The above-entitled cause came on for a

17    Zoom hearing before the HONORABLE LAUREL M. ISICOFF,

18    one of the Judges of the UNITED STATES BANKRUPTCY

19    COURT, in and for the SOUTHERN DISTRICT OF FLORIDA,

20    Miami-Dade County, on Friday, February 12, 2021,

21    commencing at or about 9:32 a.m., and the following

22    proceedings were had:

23

24           Transcribed from a Zoom recording by:
                  Helayne Wills, Court Reporter
25

Page 266

1   APPEARANCES VIA ZOOM:

2        BANKRUPTCY NOW, by
         MICHAEL J. BROOKS, ESQ.,
3        and
         LAW OFFICE OF LOUIS ARSLANIAN, by
4        LOUIS ARSLANIAN, ESQ.,
         on behalf of the Debtors

5

6        LAW OFFICES OF MIGUEL PARLADE, P.A., by
         MIGUEL F. PARLADE, ESQ.,
7        on behalf of the Hammocks Community Association
         and Marglli Gallego

8

9        JUAREGUI LAW, P.A., by
         SABINO JUAREGUI, ESQ.,
10       on behalf of Marglli Gallego

11

         ALSO PRESENT:
12       ECRO - Electronic Court Reporting Operator
         JOSUE CEPERO
13       LETICIA CEPERO
         ANNA DANTON (phonetic)
14       KINSELL LAMBERT, Interpreter

15

16                       EXHIBITS

17

18   DEBTORS'                               PAGE

19    No. 25                                298
      No. 26                                296

20

21

22

23

24

25

1          THE COURT:  All right.  Good morning,

2    everybody.  Happy Friday.

3          MR. PARLADE:  Good morning, Your Honor.

4          MR. BROOKS:  Good morning.

5          THE COURT:  We're here on the continuing

6    trial in the Josue and Leticia Cepero matter on the

7    motion for contempt as amended.

8          I'm going to remind everyone to please

9    keep yourselves on mute when you are not speaking,

10   and to take yourself off mute when you are speaking.

11   Also, please remember to speak slowly and clearly

12   when you speak, and to the extent possible, identify

13   yourself each time that you speak, so that the

14   transcript can accurately reflect who is speaking at

15   any particular time.

16          For those of you who are going to be using

17   a translator today for testimony, remember that the

18   witness and the translator can be together, but

19   there can be no one else in the room with the

20   witness.  I think everything else we went over

21   yesterday.

22          I do see that we have someone named Anna

23   Danton (phonetic), who is not on mute.  I do not

24   know who Ms. Danton is, but she needs to put herself

25   on mute.

1                And so I'm going to go ahead and take

2    appearances.  So we'll start with Mr. Brooks and

3    Mr. Arslanian.  Gentlemen, please make your

4    appearances.

5                MR. BROOKS:  Michael Brooks for Josue and

6    Leticia Cepero.

7                THE COURT:  Your video is breaking up.

8    Are you -- I'm sorry.  Your video is breaking up and

9    your audio is breaking up.  Your video and audio are

10   breaking up.

11               Are you in the same place you were

12   yesterday?  Are you using the same --

13               MR. BROOKS:  Yes.

14               THE COURT:  Are you using the same device

15   that you used yesterday?

16               While you try to work out your connection,

17   I'll take Mr. Parlade's appearance, and then we'll

18   go back to you, Mr. Brooks.

19               Mr. Parlade.

20               MR. PARLADE:  Good morning, Your Honor.

21   Miguel Parlade on behalf of Hammocks Community

22   Association, and Marglli Gallego.

23               THE COURT:  All right.  Mr. Jauregui, if

24   you'd like to make your appearance.

25               MR. JAUREGUI:  Yes.  Good morning, Your

1    Honor.  Sabino Jauregui on behalf of Marglli

2    Gallego.

3                THE COURT:  Okay.  And I note that -- we

4    lost them, so we'll wait for them to reconnect.

5                Mr. Parlade, did you go somewhere else

6    today that has a better connection?

7                MR. PARLADE:  A much better connection.

8    I'm home, but it's a much better Internet

9    connection.  So no more problems, hopefully.

10               THE COURT:  Well, not for you, but we

11   didn't want to not have problems today, so now we'll

12   have Mr. Brooks and Mr. Arslanian provide the

13   Internet problem.  Oh, well.

14               MR. PARLADE:  Never a dull moment, Your

15   Honor.

16               THE COURT:  At least I can see

17   everybody -- well, those who are making appearances,

18   I can see everybody's faces, but the lawyer with the

19   cat filter has really gotten a lot of people, given

20   them a little lighthearted entertainment.

21               All right.  We have them back.  Let's see

22   how it's working now.  I'm now showing connection to

23   audio, so let's see how that works.

24               All right.  Mr. Brooks, do you want to

25   try?  No.  They just got kicked off again.

1      Shall we try again?  Mr. Brooks, please

2  make your appearance.

3      MR. BROOKS:  Hopefully.  Michael Brooks,

4  for the debtors (inaudible).  One second.  We're

5  getting --

6      THE COURT:  Maybe you should go into a

7  different place with better Internet connection.

8  Wherever Mr. Arslanian was in the morning yesterday,

9  it seemed to have a better connection than where you

10 are now.

11     MR. ARSLANIAN:  We're in the same --

12     THE COURT:  Okay.  Well, let's take a

13 brief recess before we finish taking appearances.

14 I'll check back in five minutes and see if you're

15 connected.

16     MR. BROOKS:  Thank you.

17     (Thereupon, a recess was taken, after

18 which the following proceedings were had:)

19     THE COURT:  Okay.  We've got Mr. Parlade.

20 All right.  Mr. Brooks, please make your appearance.

21     MR. BROOKS:  Michael Brooks for the

22 debtors, Josue and Leticia Cepero, B-R-O-O-K-S.

23     THE COURT:  All right.  And Mr. Arslanian.

24     MR. ARSLANIAN:  Good morning, Your Honor.

25 May it please the Court.  My name is Louis

1  Arslanian, A-R-S-L-A-N-I-A-N, for the debtors.

2          THE COURT:  All right.  We're here for day

3  two of the evidentiary hearing.  I received the

4  amended exhibit register.  Thank you, Mr. Brooks.

5  I've also reviewed a motion for reconsideration, so

6  we will take that motion first, and then we'll move

7  on.  All right?

8          So go ahead Mr. -- who's going to argue

9  it, Mr. Brooks or Mr. Arslanian?

10          MR. BROOKS:  Well, Mr. Arslanian is going

11  to argue it, but I have one -- we could not -- we

12  were unable to attach the exhibits to the exhibit

13  register, but I do have a thumb drive that I can

14  drop off at the court.

15          THE COURT:  I have the thumb drive from

16  last year.  Unfortunately, I didn't have the

17  attachment that I needed for my laptop in order to

18  access the exhibit.  You can drop it off with the

19  court, but there's no one there.

20          MR. BROOKS:  Okay.  I'll leave it at the

21  front.  Okay.  Mr. Arslanian is going to argue.

22          THE COURT:  Also, I did want to note for

23  the record before we go to the argument, that in

24  addition to those from whom I have now taken

25  appearance, I have listed a Mario Beovides

1    (phonetic), but I don't see a Mario Beovides.  And I

2    have Maria Alonso and Albert Alfaro, and then an

3    Anna Danton.  I assume all of those are on listen

4    only.  Okay.  All right.

5            So, Mr. Arslanian, I've reviewed the

6    motion to reconsider, but go ahead and highlight

7    whatever you wish me to -- whatever you wish to

8    highlight.  But I have reviewed it.  I actually read

9    it twice.  So go ahead.

10           MR. ARSLANIAN:  Okay.  Well, I'm not going

11   to -- if you read it, I don't want to reiterate

12   what's in there.  I just want to make sure that -- I

13   think this is a serious matter that's the key

14   component to the motion, and I don't think that

15   (inaudible).

16           I'm concerned that it's going to die on

17   the vine, because A, they agreed to its submission

18   to begin with.  B, we took a deposition, and I'm

19   pretty sure that that witness did identify the part

20   of the letter -- not just the tree part, that

21   they're going to prune the trees, but the part that

22   spoke in a derogatory nature about our clients.

23   That's the part of the motion.

24           If we're going to die, the witness, we

25   subpoenaed her.  I mean, we can't just --

Page 273

1   something's got to be done to allow this.  I really
2   think that in light of Exhibit 11 that was
3   apparently stipulated to not be part of the
4   proceeding, I'm stuck with that stipulation, but I
5   think they should be stuck with their admission that
6   13 was admissible.  That's it.
7             I wrote -- I worked on that motion last
8   night, and then I had to do a writ of cert after
9   that for another case.  So that's everything I need
10  to say.
11            THE COURT:  All right.  Mr. Parlade.
12            MR. PARLADE:  Good morning, Your Honor.
13            Your Honor, first let me approach as to
14  what they're saying about the admission of the
15  exhibit from last year, and the subsequent striking
16  of that exhibit during the trial.  As you know, a
17  motion for reconsideration is governed by Federal
18  Rule of Civil Procedure 59.  They have ten days from
19  the date of the order of this Court striking the
20  exhibit in order to petition the Court to reconsider
21  its motion.  We are now a year after, far, far
22  beyond the ten days.
23            Further, pursuant to Federal Rule of Civil
24  Procedure 59, they have a number of listed
25  exceptions as to which they can try to petition the

1    jurisdiction of this Court from consideration.  I am

2    unsure of which one they're proceeding under, but

3    the fact that opposing counsel thinks they are

4    pretty sure that the witness admitted that the

5    entirety of the exhibit was shown to them or

6    understood by them or recognized by them, is not

7    supported by anything in the transcript.  It is

8    merely the testimony of counsel.

9            I just -- I'm briefly reading this motion

10   too.  Again, it was filed at 10 o'clock last night.

11   I apologize.  So as we are talking I'm briefing

12   through it.  But this is one of those motions

13   procedurally, it is not proper procedure and should

14   be denied as a matter of law.

15           THE COURT:  Okay.  Any brief response,

16   Mr. Arslanian?

17           MR. ARSLANIAN:  It's not a Rule 59 motion,

18   Judge.  The Judge can reconsider anything.  This is

19   not a -- it's not a judgment.

20           The ruling to admit or not admit evidence

21   or any other rulings that have been made, rulings

22   that were made yesterday, are not the judgment.

23   They're not the subject of Rule 59 or Rule 50.

24           THE COURT:  Okay.  Anything else?

25           MR. ARSLANIAN:  I stand on what's written

1    in the motion.  I know the Court looked at it.

2              THE COURT:  Okay.  Let me go first to what

3    happened last year.  As I normally do, although I

4    didn't do it this time, meaning yesterday, I

5    normally ask the parties ahead of time if there are

6    any exhibits for which they do not have an

7    objection.

8              And it's not done -- I'm not talking about

9    a pre-trial stipulation.  I'm talking about just at

10   the beginning of the trial on that day, is there

11   anything that anybody is not objecting to, so we can

12   just move through those.  Okay?

13             And you are right.  Exhibit 13 was one of

14   the exhibits that Mr. Parlade said he did not have

15   an objection to.  However -- and that was that day.

16   So in other words, had Mr. Parlade not made that

17   statement on that day, nothing changed.  There was

18   no witness that was excused after that agreement.

19   Nothing changed.

20             So then when we got to that portion of the

21   trial, and of course, you've read the transcript,

22   Mr. Parlade rescinded.  And you are correct.  My

23   recollection was correct, that Mr. Parlade did not

24   cite foundation with respect to that particular

25   exhibit.

1           But having said that, and the stipulation

2    regarding that exhibit not having occurred

3    pre-trial, so that there would be prejudice, and

4    under those circumstances, I would have done exactly

5    what I did for purposes of this time, where I

6    granted your motion to reopen -- I asked Mr. Frank

7    to go ahead and put on the foundational -- the

8    foundation necessary as to admit the exhibit, and he

9    was unable to meet that obligation.

10          I gave you the opportunity to fix that

11   problem.  I gave Mr. Parlade the opportunity to take

12   a deposition for the purpose of determining the

13   knowledge, et cetera.  That was what Mr. Parlade was

14   doing.

15          As far as the deposition transcript is

16   concerned, that deposition transcript says, and I'm

17   paraphrasing, the following:  I got the tree

18   trimming letter, okay, and there was something else

19   attached.  There was something about Josue and

20   Leticia, and I didn't think it was right.

21          Again, I'm paraphrasing.

22          There is nothing in the transcript to

23   indicate that that letter, the other stuff I'll call

24   it, using a technical legal term, was attached to

25   what was shown to the witness.  In fact, it is clear

1    from the transcript that there was nothing attached,

2    other than the tree trimming letter.  So -- and I'm

3    not even sure it's that tree trimming letter,

4    because there's -- it was not marked as an exhibit

5    for the deposition.

6            So I have no way of knowing what tree

7    trimming letter was showed to this witness.  I can

8    assume that it was the tree trimming letter that was

9    attached.  The fact that you chose, Mr. Arslanian,

10   not to show the witness as a part of Composite

11   Exhibit 13, or just show her that part behind the

12   tree trimming letter, is this the letter that you

13   say was attached?  You did nothing.  You did not ask

14   the question.

15           So sure.  The witness talked about there

16   being another thing attached, but I have no idea

17   what that was.  I have no way of knowing whether

18   that was the material that is attached to your

19   proposed Exhibit 13.  And so there's no basis to do

20   that.

21           Now, although you did not include it in

22   the relief that you titled your motion, at the end

23   you say that I should do something.  So what did --

24   I hear you, but I'm sorry, Mr. Arslanian.  I don't

25   practice law anymore, and I am not your associate

1    and I am not your law partner.

2            If you wanted me to issue an order

3    yesterday compelling the witness to appear today, I

4    would have absolutely issued that order immediately.

5    But you did not ask me.  I asked you did you want us

6    to wait to see if she would show up, or do anything

7    else.  I believe those were my exact words, and you

8    said no, you wanted to proceed.  And I allowed you

9    to admit the deposition, but it didn't get you

10   anywhere, because you had not done what you needed

11   to do.

12           So I hear you, Mr. Arslanian, and I agree

13   with you with respect to that case, that that's a

14   critical document, but that's where we find

15   ourselves.  If there's additional relief that you

16   believe that you wish, that you believe you're

17   entitled to, notwithstanding where we are in the

18   trial, then I expect you to seek that relief

19   appropriately.

20           Now, let me go back to Exhibit 11.  When I

21   discussed the stipulation or addressed the

22   stipulation yesterday, it had nothing do with

23   Exhibit 11, per se.  It is when the parties

24   stipulated ahead of time what was going to be at

25   issue for the motion for contempt, the two issues

1    were, the entire incident in the parking lot on May

2    15th, and the tree trimming letter.

3            That had nothing to do with Exhibit 11,

4    per se, other than the fact that Exhibit 11 became

5    maybe presumably irrelevant.  I don't know why

6    Mr. Frank decided not to seek admission of Exhibit

7    11, but I do know that the filing of that -- I guess

8    it's a request for a domestic violence injunction,

9    for whatever reason, Mr. Frank chose not to -- did

10   not seek to have that document admitted with respect

11   to the two items that the parties stipulated were

12   those that were of issue.  So I'm going to deny your

13   motion to reconsider.

14           I don't disagree that Rule 59 does not

15   necessarily apply.  There is -- you know, there's a

16   lot of academic articles, comments in case law, that

17   there is really no motion to reconsider in Federal

18   Court.  But Federal Judges use -- I think it's

19   Rule -- I want to say 52, could be 58.  I don't

20   remember the rule as we're sitting here right now,

21   but there is a rule that the judges rely on.

22           But be that as it may, I'm going to skip

23   over the procedural, and I've answered your

24   substantive issue.

25               MR. ARSLANIAN:  Your Honor --

1          THE COURT:  Go ahead, Mr. Arslanian.  You

2     want to say something?

3          MR. ARSLANIAN:  Yes.  At the end of the

4     motion we ask, in the alternative, we asked the

5     Court to have the marshals pick up the witness and

6     compel her to testify.  I've heard the Court -- I've

7     heard the law.  I'm not sure whether or not we

8     mentioned that or not, and I can't say for sure that

9     I did, but we're asking for it now, and my

10    understanding is from your ruling, that if I would

11    have asked for that yesterday it would have been

12    granted.

13          So if I'm asking for it last night and now

14    today, it's hopeful that that can be granted,

15    because I think that would -- I mean, we proceeded

16    with the deposition, because we thought that would

17    get the thing done, but apparently it didn't.  We

18    weren't talking about anything else, other than that

19    13.  She had it in her hand.  I gave it to her.  She

20    had it with her, and Mr. Parlade had it in his hand

21    during the deposition.  But I understand it's not

22    perfectly clear, even though the deposition was

23    solely taken about Exhibit 13.

24          THE COURT:  Well then, I guess,

25    Mr. Arslanian, you should have done your job at the

Page 281

1   deposition and you failed to do it.  Now --

2              MR. ARSLANIAN:  Your Honor --

3              THE COURT:  I'm done talking about the

4   deposition.  You blew it, you're problem.

5              MR. ARSLANIAN:  Okay.

6              THE COURT:  Now, with respect to the

7   witness, I don't just send marshals out to pick

8   people up, all right?  There is a procedure that you

9   have to use.  If you wish me to issue an order to

10  show cause why the marshals should not go pick her

11  up for failing to comply with a subpoena, then ask

12  for it.  And make sure she is served with that.

13             If you had done that yesterday, then we

14  could have gotten her today.  There's no time to do

15  it today, and then you'll have to deal with asking

16  to reopen the evidence again.  When you ask for

17  that, I will consider it, because you've already

18  closed your case in chief.

19             You know, as I said before, Mr. Arslanian,

20  I'm not your law partner and I'm not your associate,

21  but I will tell you that I am not just going to send

22  marshals out, because you threw away, at the end of

23  an order for relief, that you want the marshals to

24  go get her.  There is a procedure you have to

25  follow.  You have to give her notice.

1          So if you want me to issue an order to

2    show cause why she should not be picked up by the

3    marshals to appear in court and honor her subpoena,

4    then you have to prepare that and you have to serve

5    it on her personally.  Then she will be on notice

6    that if she doesn't show up, she will have a U.S.

7    Marshal at her door.  But we don't just go send out

8    marshals to pick people up.  That's not the way it

9    works.

10          And I hope to God you never have to have

11   that experience, but let me tell you something.  I

12   have had someone brought into my chambers -- I mean,

13   my courtroom, in foot cuffs and handcuffs, twice.

14   It is a horrifying experience, and that's why we

15   have procedures in place to make sure that that's

16   the last resort, not the first resort.

17          So as I said, Mr. Arslanian, you finish

18   with your rebuttal, and then if you wish to try to

19   reopen the evidence and bring the witness in, then I

20   will deal with those issues when you ask for them

21   properly.  But I'm going to deny the motion that you

22   filed, without prejudice to your filing other

23   procedural motions.

24          Now, would you like to put on a rebuttal

25   case?

1          MR. ARSLANIAN:  Yes, I would, Your Honor,

2   very briefly.

3          THE COURT:  Well, you don't have to be

4   brief.  We've got all day.  Not that I want it to

5   take all day, but you have all day.

6          THE INTERPRETER:  Your Honor, I'm sorry to

7   interrupt.  If I may.  This is the interpreter.  I

8   know I promised Mr. Parlade that I would not

9   interrupt today.  I am so sorry.

10          I'm having a difficult time hearing

11   Mr. Arslanian.  There's like an echo.  I'm making

12   out I'd say about 95 percent of what he says, but

13   I'm worried about that five percent that I might not

14   catch.  It's like an echo.  I don't know if he's

15   using two devices or -- I don't know.  I'm just

16   having a difficult time hearing him.

17          THE COURT:  Okay.  The Court has no

18   problem hearing him, so it's probably your device.

19   So I can't tell you what to do.

20          THE INTERPRETER:  No problem, Your Honor.

21   I will work with it.

22          THE COURT:  Okay.  In any event, I'm

23   sorry.  I know how annoying that is.  All right.

24          So, Mr. Arslanian, why don't you proceed

25   with your rebuttal, please?

Page 284

1          MR. ARSLANIAN:  I would like to play for

2     the Court what has been marked on our amended

3     exhibit register as Number 23, which is Respondent's

4     Exhibit N, a video.

5          THE COURT:  Okay.  Hopefully we'll all be

6     able to see it.  Go ahead.  This is marked on your

7     exhibit register as -- this is M like in "Mickey" or

8     N like in "noun"?

9          MR. ARSLANIAN:  N like "noun."

10         THE COURT:  Okay.  So this is your Exhibit

11    23.  Okay.

12         Mr. Parlade, this is your exhibit, so

13    authenticity is established.  And I believe that

14    yesterday you said you would not have an objection

15    to these exhibits; is that correct?  Am I

16    remembering correctly?

17         You have to unmute.

18         MR. PARLADE:  Judge, I have no problem as

19    to its authenticity.  However, the foundation has

20    not been laid for a video to be played.

21         As is recognized by the Federal Rules of

22    Civil Procedure, rebuttal evidence is new evidence

23    that's contradictory, but both allegations made by

24    the opposing counsel's case in chief, none of that

25    has been established prior to playing this video.

Page 285

1    So I have no idea why he wants to play it.

2                THE COURT:  Okay.  All right.  So,

3    Mr. Arslanian, why don't you give an introduction as

4    to why you're seeking the admission of Exhibit M --

5    N.  I'm sorry.

6                And I hear you, Mr. Parlade, but I

7    disagree that it has to be new evidence.  It can be

8    old evidence that just needs to be something with

9    regard to the case in chief.

10               So, Mr. Arslanian, if you'll just lay a

11   brief foundation why you believe Exhibit N, as in

12   "noun," is appropriate rebuttal evidence.  So a

13   brief introduction.

14               MR. ARSLANIAN:  Sure.  Because the

15   respondent, Ms. Gallego, testified that she was

16   being followed by the Ceperos.  The video shows

17   otherwise.

18               THE COURT:  Okay.

19               MR. ARSLANIAN:  There was also testimony

20   that the Ceperos not only followed her, but blocked

21   her.  The video shows otherwise.  It shows the cars

22   driving, and it shows Ms. Gallego blocking and

23   obstructing the path of the Ceperos.  So it's

24   rebuttal of what she testified to.  It's visible and

25   it shows this.

1    THE COURT:  Okay.  So it's a contradiction

2  of Ms. Gallego's testimony of yesterday?

3    MR. ARSLANIAN:  Correct.

4    THE COURT:  Okay.  I'm going to overrule

5  your objection, Mr. Parlade.  Go ahead,

6  Mr. Brooks -- I mean, Mr. Arslanian, or whatever.

7    Hopefully it's something bigger than that,

8  because I can't see anything.

9    UNIDENTIFIED VOICE:  I'm sorry.  Let me

10  see if I could open it up.  Hold on.

11    Could you see it better like this?

12    THE COURT:  Yes.  Mr. Parlade, can you see

13  it?  Yes, Mr. Parlade?

14    MR. PARLADE:  Yes, Your Honor.

15    THE COURT:  Okay.  Go ahead.  Push the

16  button.

17    (Thereupon, a video was played).

18    THE COURT:  Okay.  All right.  I'm going

19  to ask that it be shown again.

20    (Thereupon, the video was replayed).

21    THE COURT:  Okay.  Thank you.  Okay.

22    MR. ARSLANIAN:  Next I have what's been

23  marked as, or listed on our amended exhibit

24  register, Number 22.  Respondent's video Exhibit M.

25  It is a continuation of another video, what we just

Page 287

1    saw, but a little further in time.

2            THE COURT:  All right.  Mr. Parlade?

3            MR. PARLADE:  Further in time before or

4    after?

5            MR. ARSLANIAN:  It was after.

6            MR. PARLADE:  Okay.  That's what I'm

7    asking.

8            MR. ARSLANIAN:  Right after the white

9    vehicle stopped in front of the gray vehicle.

10           MR. PARLADE:  So the same objection, Your

11   Honor.  The original video was intended to show that

12   they weren't being followed -- that they weren't

13   following or they weren't blocking anybody.  What

14   exactly would the relevance of the after video have

15   to do with rebutting any prior testimony put on in

16   my case in chief?

17           THE COURT:  Okay.  I'm going to overrule

18   your objection, Mr. Parlade.  I hear you, but I'm

19   going to -- again, the beauty of having a judge be

20   the trier of fact is, if I don't think it's

21   relevant, then I'm not going to rely on it.

22           I overrule your objection.

23           MR. PARLADE:  I appreciate it.

24           THE COURT:  If you could make sure,

25   Mr. Arslanian, that your technology person does the

Page 288

1    same thing as she did last time, that will make it
2    easier for all of us.
3              Okay.  Mr. Parlade, can you see the video?
4              MR. PARLADE:  I can see it, Your Honor.
5              THE COURT:  I can see it, as well, so
6    please proceed, Mr. Arslanian, or assistant person.
7              (Thereupon, a video was played.)
8              MR. PARLADE:  Your Honor --
9              THE COURT:  What is it, Mr. Parlade?
10             MR. PARLADE:  I object.  There appears to
11   be dialogue going on that's in Spanish, that hadn't
12   been translated for this Court.  If the video is
13   stipulated to be played in its entirety, I believe
14   this should have been translated and provided to
15   this Court, at least so we'll know what they're
16   saying.
17             THE COURT:  Okay.  I'm going to disregard
18   the audio, because you're right.  It's not in -- and
19   even though I can understand it, because I speak
20   Spanish, I'm disregarding the audio.
21             MR. PARLADE:  Thank you.
22             THE COURT:  All right.  Continue playing.
23   I don't think it stopped.
24             UNIDENTIFIED VOICE:  It's done.
25             THE COURT:  Go ahead and just play it

Page 289

1    again.

2              Okay.  All right.  Thank you.

3              MR. ARSLANIAN:  I feel like I'm naked if I

4    don't have the technical person next to me.

5              THE COURT:  Well, I'm just going to let

6    that one go.

7              Okay.  Mr. Arslanian, what else did you

8    wish to accomplish this morning, with respect to

9    your rebuttal case?

10             MR. ARSLANIAN:  The only other document

11   that I would ask the Court to view and admit as

12   rebuttal is what's been listed as -- from the

13   amended exhibit register as Number 25 and 26.  Those

14   are -- we got into it yesterday, but that is the

15   November 2017 lawsuit in the docket, showing that as

16   to the Ceperos, it was voluntarily dismissed

17   approximately a month after it was filed.

18             This is in relation to -- because I want

19   to establish relevance, and why it's rebuttal -- is

20   that this is part of what led to the initial orders.

21   And it was at that time, and there was some

22   testimony about, and I asked Ms. Gallego about her

23   knowledge of whether she knew that she couldn't file

24   lawsuits against the debtors while they were in

25   bankruptcy.

1           And it was not clear from her testimony.

2    She wasn't sure.  She thought that she could do it.

3    I want to show that because there was -- the amended

4    motion now has the 2020 lawsuit.  She knew that the

5    2020 lawsuit couldn't be filed.  I want to show the

6    2017 lawsuit, and her voluntary dismissal quickly,

7    as her prior knowledge that she wasn't allowed to

8    file lawsuits against the debtors while they were in

9    bankruptcy.

10           THE COURT:  I'm assuming you're not saying

11   "her," you're saying "they," correct?

12           MR. ARSLANIAN:  Yes.

13           THE COURT:  You did not put docket numbers

14   with these.  I'm not going to sit here and go

15   through the docket and try to figure out what

16   exhibits you're trying to seek admission of.

17           What docket numbers are they?

18           MR. BROOKS:  It's a state court lawsuit,

19   and the docket sheet for the state court lawsuit,

20   showing the complaint being filed and the dismissal

21   thereof.  And that was in Case Number 2017-027089.

22           THE COURT:  Mr. Arslanian, what I'm saying

23   is, I don't have these exhibits.  So I presume that

24   you want me to look at something that was filed on

25   the court docket, my court docket.  You need to tell

1    me -- I can't just admit a document that I can't

2    see.

3              So I'm assuming, and I vaguely recall from

4    yesterday, that they were on my computer screen.  So

5    they must be somewhere on my Bankruptcy Court

6    docket.  Where are these exhibits on my Bankruptcy

7    Court docket, or did you attach them to something

8    that you filed last night that I did not notice?

9              (Inaudible).

10             MR. ARSLANIAN:  304 is the docket.  That's

11   2017?

12             UNIDENTIFIED SPEAKER:  They didn't file

13   the 2017.

14             MR. ARSLANIAN:  Okay.  There's not a

15   previous -- there is not one filing in the

16   Bankruptcy Court, other than the one that we

17   attempted last night, Number 312, where we could

18   only list the exhibits.

19             My technical person knows how to open all

20   these things.  Somehow she just could not.  She

21   showed me.  We could not attach the PDF, the video.

22   We couldn't attach anything to the filing.  We would

23   have, but it wouldn't take it.

24             THE COURT:  I can't consider an exhibit

25   that I don't have in front of me, but I am

1    absolutely positive that I looked at that document

2    yesterday.  I just don't know where it is on the

3    Bankruptcy Court docket.

4            So I'm going to give you -- I'm going to

5    take a five-minute break for you to look through

6    these documents, but I cannot admit a document that

7    I do not have in front of me.  All right?  So we're

8    going to take another five-minute break so that you

9    can find where these are on the docket, and then

10   I'll come back and address your request to have them

11   admitted.

12           Mr. Parlade, that will give you time to

13   determine whether and to what extent you're going to

14   object to the admission of those documents.  Okay?

15           MR. PARLADE:  Judge, just to refresh the

16   Court's memory, those weren't filed on the docket.

17   Those were shown on the screen yesterday by

18   Mr. Arslanian.  They were never filed on the docket

19   or listed previously as an exhibit.  This is one of

20   his last minute, on the eve of trial exhibits, just

21   like the past, one, two, three, four, five exhibits.

22   Literally the eve of trial they're trying to add

23   another exhibit.

24           And I understand your Court, Your Honor,

25   in giving some leeway to the debtors, but it has now

Page 293

1  become more than frustrating for myself and for my

2  clients to have all these exhibits, to have not been

3  filed with the Court, have not been docketed, have

4  not been previously listed as exhibits, all of a

5  sudden to appear on the eve of trial as a surprise

6  and as an attempt to get a leg up on the opposing

7  counsel.

8          THE COURT:  Okay.  Mr. Parlade, let me

9  address that.  One, you have no surprise with

10 respect to the movant using your exhibits that you

11 sought not to introduce.

12         MR. PARLADE:  It's not my exhibit.

13         THE COURT:  I'm talking about the videos

14 and the audio.

15         MR. PARLADE:  I'm not talking about those

16 at all.

17         THE COURT:  Okay.  With respect to

18 rebuttal exhibits, as you know well, parties are not

19 required to list either rebuttal or impeachment

20 documents on their exhibit registers.

21         Now, having said that, I'm still saying

22 I'm sure as heck not admitting a document that I

23 don't have -- I don't see.  And you're right.  Now

24 I'm remembering.  There was a screen share.

25         So we're going to take the five minutes,

1  and Mr. Arslanian, you're going to upload on the

2  docket the PDF, or I'm not admitting them, because I

3  can't do that.  We're taking a five-minute break.

4  When we come back we'll deal with them.

5              MR. ARSLANIAN:  Thank you.

6              (Thereupon, a recess was taken, after

7  which the following proceedings were had:)

8              THE COURT:  Mr. Brooks or Mr. Arslanian.

9              MR. ARSLANIAN:  Yes, Your Honor.

10             THE COURT:  All right.  I have checked.

11 Those documents are still not on the docket.

12             MR. ARSLANIAN:  I believe she's uploading

13 them right now.  I just saw her --

14             THE COURT:  Well, I don't understand why

15 they weren't uploaded when you intended to use them

16 as exhibits.  Now my law clerk has reminded me,

17 however, that Mr. Parlade, you are the one that did

18 the screen share of the 2017 lawsuit yesterday, no?

19             MR. ARSLANIAN:  No, I did.  I definitely

20 did it.  And again, when we filed our amended

21 exhibit register last night, 312, we attempted to

22 attach all these documents, including 25 and 26.

23 The lawsuit and the lawsuit docket we're doing a

24 notice of filing right now.

25             None of these documents could be attached.

Page 295

1   That's why we had to just file the list.  I can't

2   explain how that happened, Judge.  I just -- I

3   can't.

4              THE COURT:  Well, I -- all right.  In

5   order to move things along, I want you to do a

6   screen share of your proposed Exhibit 25.  All

7   right?  Then, Mr. Parlade, I will hear any

8   objections.

9              MR. PARLADE:  Thank you.

10              THE COURT:  And by the way, Mr. Arslanian,

11   this is the first, last and only time that I'm going

12   to give you this break, okay?  I expect you in the

13   future to comply with the (inaudible).  Go ahead.

14              MR. ARSLANIAN:  Yes, Your Honor.  I need

15   to get my person to open them up.  I'm trying to

16   upload them to the Court, so I'm going to bring them

17   back here so she can screen share them.  Give me one

18   second, please.  I'm sorry.

19              THE COURT:  That's your Exhibit Number 26;

20   is that correct, Mr. Arslanian?

21              MR. ARSLANIAN:  Yes, Your Honor.

22              Judge, as you can see on this screen

23   share, the second entry, the complaint, is filed on

24   November 22, 2017.  And then if we scroll up a

25   little bit you can see -- you don't even have to

Page 296

1    scroll up.  You can see entry December 18, voluntary

2    dismissal, parties Cepero, Josue Cepero, Leticia.

3              THE COURT:  Okay.  So you're seeking

4    admission of Exhibit 26.

5              Mr. Parlade, your response.

6              MR. PARLADE:  Your Honor, the foundation

7    has not been laid as to rebuttal evidence and its

8    presentation.  Opposing counsel just testified that

9    when he asked Ms. Gallego about the 2017 exhibit,

10   she had no knowledge as to when it was filed, as to

11   when it was dismissed.  Even under redirect when I

12   asked her, "Do you know when you got notice of the

13   bankruptcy," she had no knowledge of it.

14             So I don't see how this rebuts the case in

15   chief by my client.  There has been no declarations

16   with reference to this lawsuit, and this is improper

17   rebuttal evidence.

18             THE COURT:  Okay.  I'm going to overrule

19   your objection.  There are two respondents in this

20   matter, Ms. Gallego and Hammock.  So I'm going to

21   allow it.  I'll admit Exhibit 26, assuming that it

22   makes it on to the docket.  If it doesn't, then I'll

23   strike the admission.

24             (Thereupon, Debtors' Exhibit No. 26 was

25      admitted into evidence.)

1          THE COURT:  All right.  Any other exhibits

2    for which you seek admission, Mr. Arslanian?

3          MR. ARSLANIAN:  I'm sorry, Your Honor.

4    Could you repeat that?

5          THE COURT:  Are there any other exhibits

6    for which you seek admission?

7          MR. ARSLANIAN:  No.

8          THE COURT:  So just the docket?

9          MR. ARSLANIAN:  Well, I would also like

10   the lawsuit, 25.

11         THE COURT:  All right.  Then put it up on

12   the screen.

13         MR. ARSLANIAN:  That's the complaint

14   that's listed in the docket, Case Number

15   2017-027089, Hammocks Association versus Cepero,

16   Josue, Leticia, Maria Alonso, Gail Sharp and Yasser

17   Martinez.

18         THE COURT:  All right.  Mr. Parlade, your

19   objection?

20         MR. PARLADE:  How is this relevant

21   rebuttal evidence?

22         THE COURT:  I'm going to overrule your

23   objection.  I'm assuming it's the same objection as

24   you raised to the docket, and I'm going to overrule

25   the objection for the same reasons.  I'm going to

1    allow it to be admitted.  It rebuts the argument

2    regarding knowledge.  So that's 25 that's admitted.

3              (Thereupon, Debtors' Exhibit No. 25 was

4         admitted into evidence.)

5              THE COURT:  All right.  Anything else,

6    Mr. Arslanian?

7              MR. ARSLANIAN:  No, Your Honor.  That's

8    it.  I'm finished with rebuttal.

9              THE COURT:  All right.  Then I will mark

10   27 not introduced.  And again, if those documents

11   are not on the docket by the end of the day today

12   I'm going to strike them.

13             MR. BROOKS:  Judge, Michael Brooks.  I'm

14   trying to download these documents, but there's

15   apparently a problem with ECF downloading it.  It

16   says it's either too busy, which I doubt, or there's

17   a problem with ECF.  So I will call the clerk to

18   find out what's going on.

19             THE COURT:  Whatever.

20             MR. BROOKS:  Okay.

21             THE COURT:  Okay.  So the movant rests,

22   Mr. Arslanian, subject to whatever you may or may

23   not file regarding Pico?

24             MR. ARSLANIAN:  Yes.  And I think we're

25   going to let that be.

1          THE COURT:  All right.  If you do choose

2  to do that, you need to do that no later than

3  Tuesday.  I'm not saying Monday, because Monday is a

4  holiday.

5          The reason I'm giving you that deadline is

6  because I'm going to ask each of you to prepare your

7  closing arguments in writing, citing the record

8  evidence that support your particular position.  But

9  I obviously don't want you to do that -- and I'm not

10 saying, Mr. Arslanian, if you file, and think that

11 I'm going to rule in your favor.  I'm not saying

12 that.

13          I'm just saying I don't want anybody to

14 spend their weekend starting to work on this if we

15 first have to deal with that issue.  Okay?  I'm not

16 pre-judging it.  I'm just --

17          MR. ARSLANIAN:  I understand.

18          THE COURT:  Okay.  So, Mr. Parlade, how

19 long would you need to prepare your closing

20 argument, which will include your record citations,

21 plus any memorandum of law that you -- you know, any

22 law that you want included?

23          MR. PARLADE:  Your Honor, respectfully, I

24 need -- since we're looking at during the week, I

25 need at least a week.

1            THE COURT:  Okay.  Well, I'm much more

2    generous than that.  Okay.  All right.

3            Mr. Arslanian, for you?

4            MR. ARSLANIAN:  Whatever the Court says is

5    fine with me.

6            THE COURT:  Here's what I'm going to do.

7    You're going to file whatever you're going to file

8    by Tuesday, if you're going to file it.  Otherwise,

9    two weeks from Tuesday -- well, I'm assuming you all

10   have to order the transcript from yesterday and

11   today.  Although today there's no real transcript

12   from today.  It's just the admission of documents.

13   So you'll have to order the transcript, because I

14   will not accept the submissions without record

15   citations.

16           So I'll give you, Mr. Arslanian, two weeks

17   -- and I'll ask you all to order that transcript

18   now.  Mr. Arslanian, I'll give you two weeks from

19   when the transcript is ready to file your written

20   closing with arguments about the law.

21           Then, Mr. Parlade, I will give you two

22   weeks after that to file your written response.

23   Okay?

24           And then, Mr. Arslanian, you'll have a

25   week to file your final argument.  That gives you

Page 301

1  approximately five weeks from the time (inaudible).

2          I will obviously write down my

3  impressions, and I will also be going into the

4  office on Wednesday.  I will bring the thumb drive

5  with me, the thumb drive that Mr. Parlade gave to me

6  last year.  I will let you all know if that thumb

7  drive has the Exhibit L, M and N on it.  If it

8  doesn't, then I'll notify you that those have to be

9  provided in some way otherwise.

10          Mr. Parlade, because you provided the

11  thumb drive to me, what I'm going to do is just,

12  based on my memory of the audio recording yesterday

13  and what I've seen here today, which is actually why

14  I wanted to see it twice, because I want to make

15  sure that the video -- and I'm not saying that you

16  didn't, Mr. Arslanian.  I just want to make sure

17  that what I have on that thumb drive matches what I

18  saw.  Okay?  If there's a problem I'm let you both

19  know.

20          And you, Mr. Jauregui, if you want to

21  know -- I'm sure Mr. Parlade is able to tell you

22  what's going on, unless you make him mad, and then

23  he's not going to tell you.

24          Okay.  All right.  So, any questions,

25  Mr. Parlade?

Page 302

1              MR. PARLADE:  Just for clarification, Your

2    Honor.  Mr. Arslanian will prepare his closing

3    arguments two weeks after the transcript of the

4    proceedings yesterday are available.  I will then

5    proceed, after receipt of Mr. Arslanian's closing

6    argument, to give a response closing argument, and I

7    have two weeks deadline after that time.  After

8    Mr. Arslanian receives my response closing argument,

9    he will have one week to file a rebuttal closing

10   argument.

11              Is that correct, Your Honor?

12              THE COURT:  That is correct.  And I'll

13   direct the ordering of the transcript today, and

14   then, Mr. Arslanian, you'll have until the end of

15   the day Tuesday to determine, and if so, file,

16   whatever you wish to file regarding Pico.  If

17   something is not on docket by Tuesday afternoon,

18   then I'll assume that you've decided to not go

19   forward with respect to the relief that we discussed

20   earlier today.  Okay?

21              MR. ARSLANIAN:  Yes, Your Honor.

22              THE COURT:  Okay.  All right.  Is there

23   anything else?  Do you have any other questions,

24   Mr. Arslanian?

25              MR. ARSLANIAN:  No, Your Honor.

1           THE COURT:  Okay.  I hope you're

2   comfortable.  We are still in court.  I don't make

3   you guys stand up, and I will tell you, there are

4   some judges, as weird as I find this, that are

5   requiring lawyers to stand up when they appear

6   before them, which to me is like, what do you do,

7   lift the laptop, or does everybody look at your

8   stomach?  I'm not really quite sure what happens

9   with that.

10          No, no.  You're okay, Mr. Arslanian.

11  Please stay seated.

12          Gentlemen, Ms. Gallego, Ms. Lambert,

13  everybody who's listening, I hope you all have a

14  good and safe weekend, and that we're all able to be

15  together again soon.

16          MR. PARLADE:  Thank you, Judge.

17          THE COURT:  Thank you.  Have a good day.

18          MR. ARSLANIAN:  Thank you.

19          (Thereupon, the hearing was concluded.)

20

21

22

23

24

25

Page 304

1                        CERTIFICATION

2

3    STATE OF FLORIDA:

4    COUNTY  OF  DADE:

5

6              I, HELAYNE F. WILLS, Shorthand

7    Reporter and Notary Public in and for the State of

8    Florida at Large, do hereby certify that the

9    foregoing proceedings were taken by electronic

10   recording at the date and place as stated in the

11   caption hereto on Page 1; that the foregoing

12   computer-aided transcription is a true record of my

13   stenographic notes taken from said electronic

14   recording.

15              WITNESS my hand this 22nd day of

16   February, 2021.

17

18

19   _____

                    HELAYNE F. WILLS
20            Court Reporter and Notary Public
           In and For the State of Florida at Large
21         Commission No:  GG123092  Expires 8/2/2021

22

23

24

25