UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
www.flsb.uscourts.gov

In Re:

JOSUE CEPERO and
LETICIA CEPERO

          Debtor(s)    /

Case Number: 17-20358-LMI
Chapter 13

## RESPONDENTS', HAMMOCKS COMMUNITY ASSOCIATION INC. AND MARGLLI GALLEGO, CLOSING ARGUMENT ON DEBTOR'S AMENDED MOTION FOR CONTEMPT

Respondents, HAMMOCKS COMMUNITY ASSOCIATION INC. and MARGLLI GALLEGO, hereby submit their Closing Argument and Incorporated Memorandum of Law pursuant to this Court's Order Setting Briefing Schedule for Closing Arguments (ECF 324), and further states:

1. At issue before this Court are whether the Respondents violated the Agreed Order on Debtor's Amended Motion for Contempt against Hammocks Community Association, Inc., and it President, Marglli Gallego dated December 4, 2018 (ECF 189) and the Order on Debtor's Amended Motion for Contempt against Hammocks Community Association, Inc. and its President, Marglli Gallego dated December 7, 2018 (ECF 191)(hereafter the "Contempt Orders") during an incident in front of Respondent, Marglli Gallego's home on May 15, 2019, and whether Respondents violated the Orders by filing a state lawsuit on November 30, 2020.[1]

2. A finding of civil contempt must be based upon clear and convincing evidence that a person or entity violated a prior court order to which they were subject to. <u>In re Cantin</u> (Bankr. S.D. Fla. 2019)(citing Jove Eng'g v. I.R.S., 92 F.3d 1539, 1545-46 (11th Cir. 1996)). To prevail, a movant must prove by clear and convincing evidence that there was a violation of a valid

---

[1] Although Debtors raise the argument in their closing argument that the filing of the lawsuit is a violation of the bankruptcy stay provisions, the pleadings do not reflect this relief sought. See, Debtors Amended Motion for Contempt (ECF 289) and Joint Stipulation of Uncontested Facts (ECF 298)

and lawful order, that the terms of the order were clear, definite and unambiguous; and whether the alleged violator had the ability to comply with Page 34 the order.  See, In re Cantin (Bankr. S.D. Fla. 2019); Jove Eng'g v. I.R.S., 92 F.3d 1539, 1545-46 (11th Cir. 1996), and In re SLK Associates, Inc., 166 B.R. 985 (Bankr. S.D. Fla. 1994).  In order to meet the burden of proof for clear and convincing evidence, a movant must demonstrate that the evidence being presented is "highly" probable such that it places the fact finder with an "abiding conviction" that the truth of the facts asserted are highly probable.  See, Proctor & Gamble Co. v. Teva Pharms. USA, Inc., 566 F.3d 989, 994 (Fed. Cir. 2009); and Shire Dev. LLC v. Watson Pharms., Inc. (S.D. Fla. 2013).

3. The Debtors have not presented clear and convincing evidence that the Respondents have violated this Courts afore-mentioned orders.  The relevant portions of this Court's Contempt Orders are as follows:

"Notwithstanding Debtors rights as condominium association owners, Debtors shall refrain from any further contact with the Hammock Community Association, Inc's President, Marglli Gallego during or immediately followingAssociation board meetings; and shall direct any formal communications with Mrs. Gallego in her capacity as the President of the Association in writing."(ECF 189)

"Ms. Gallego shall refrain from any further contact with the Debtors, Josue and Leticia Cepero, during the bankruptcy, and until such time as the bankruptcy has been discharged and/or dismissed. During such time, there shall be no communication from, Marglli Gallego, individually, or in her capacity as the president of the Hammocks Community Association Inc., with reference to the bankruptcy filed by Josue and Leticia Cepero, the Debtors' debts, the Debtors' creditors or any other business relationships the Debtors may have relating to the Bankruptcy. This includes a prohibition against Marglli Gallego, individually, to approach the Debtors, to communicate with or about the debtors, in person, or in writing, or with any

other Association members, including but not limited to, from communicating to anyone regarding any matter relating to the bankruptcy, the Debtors' failure to pay maintenance payments, or any other financial matters of the Debtors."(ECF 191)

"Hammocks Community Association, Inc., and it's President, Marglli Gallego shall refrain from any further contact with the Debtors, Josue and Leticia Cepero, during the bankruptcy and until such time as the bankruptcy has been discharged and/or dismissed. During such time, there shall be no communication from any representative with Hammocks Community Association, Inc., and/or it's President, Marglli Gallego, and either her individually, or her capacity of her representative of the Association, with reference to the bankruptcy filed by Josue and Leticia Cepero, the Debtors' debts, the Debtors' creditors or any other business relationships the Debtors may have relating to the Bankruptcy. This includes a prohibition against Hammocks Community Association, Inc., and/or it's President, Marglli Gallego, to communicate with or about the debtors, in person, or in writing, or with any other Association members, including but not limited to, from communicating to anyone regarding any matter relating to the bankruptcy, the Debtors' failure to pay maintenance payments, or any other financial matters of the Debtors." (ECF 189).

### **THE INCIDENT ON MAY 15, 2019**

4. On May 15, 2019, as Marglli Gallego was waiting in front of her son's school to pick him up before 4:00 PM, she noticed that there was a car acting strangely in the pickup line at the school. (Tr. at 194:9 – 194:16) and (Tr. at 257:8 to 257:9). This car ends up following her, but she did not recognize that she was being followed until she noticed a device by the mirror of the car that was following her, and then she noticed that the car was being driven by Josue Cepero. (Tr. at 195:1 – 195:10) and (Tr. at 197:20 – 198:3). She stated that she continued driving and sped up to try to make it home faster. (Tr. at 196:4 – 196:13). Eventually, when she made it home, she began pulling into her parking lot and suddenly the debtors came

across her parking lot and got in front of her car. (Tr. at 195:14 – 195:18). At no time during the incident did Mrs. Gallego attempt to make contact or communicate with the Debtors. (Tr. at 195:16 – 195:19). At one point, Mrs. Gallego pulled out her phone to record what was going on and she stated that the Debtors "never put their windows down and they never tried to say anything to me. And when I tried recording them, they were putting something up against the window so the I couldn't see their face." (Tr. at 202:16 – 195:24).

5. At 4:40 PM, the police arrived at the location in front of Marglli Gallego's house. (Debtors' Ex. No. 10) The photo of the Debtors in their car holding up the letter and the actual letter itself have been admitted as Respondent's Exhibit F and G. The timing of this contact between the Debtors and Marglli Gallego was no coincidence. The letter was received by Marglli Gallego some time in April 2019, before elections were to be held by the Heron by the Bay Association on or around May 15, 2019. (Tr. at 195:1 – 195:10); See, also Exhibit G, page 2, "If you follow Marglli Gallego's directions on how to prevent an honest election, you will be part of her campaign to ruin the Heron physically and financially. Complete the ballot yourself and mail it immediately. It will reach the management company in three days." The evidence demonstrates that Marglli Gallego may have been targeted by the Debtors in relation to the elections process in the Heron Association.

6. During their case in chief, the Debtors called Officer L.J. Cobo who was present at the incident on May 15, 2019. Officer L.J. Cobo was asked by Debtors' attorney Michael Frank, "You had stated that from what you saw, Ms. Gallego was blocking the car of the Ceperos?" and Officer Cobo responded, "Blocking the car of Gail Sharp, I believe." (Tr. at 21:19 – 21:22).

7. Maria Alonso, the President of Heron Association, was asked if during the incident the Debtors ever got out of their car while Ms. Gallego was present, and she responded "No." (Tr. at 36:17 – 36:20). When she was asked if Ms. Gallego every tried to open the vehicle

belonging to the Debtors or tried to physically contact the Debtors, she also responded "No." (Tr. at 36:23 – 37:1). While Ms. Alonso never testified that she observed Ms. Gallego's car blocking the Debtors' car.

8. Upon further examination, Maria Alonso stated that she was going to meet the Ceperos somewhere at the Heron, wherever she was "going to be" and that she "couldn't tell them where I was going to be.". (Tr. at 49:3 – 49:8). She said the incident on May 15, 2019 happened between Building 1 and 2, but that she was at building 8 when she was called by the Debtors. (Tr. at 48:11 – 48:14). Upon further examination, Maria Alonso admitted that she had no tenants in either building 1 or building 2. (Tr. at 49:20 – 49:24).

9. Under direct examination, Josue Cepero stated that on May 15, 2019 he had gone to the "Heron Building" to see Maria Alonso and that he had just come from Wells Fargo Bank located approximately six minutes from the building at the Heron. (Tr. at 54:9 – 54:10) and (Tr. at 56:8 – 56:10). Under cross examination, when the Josue Cepero was asked how he arrived at the location where he was parked, he responded that he had just chosen that location at random "because there was a guest parking available." (Tr. at 63:7 – 63:10). He then went on to say that he did not know where Marglli Gallego lives but admitted he has had dealings with her since 2016. (Tr. at 63:11 – 63:13) and (Tr. at 64:10 – 64:12). Under direct examination, Marglli Gallego stated that Josue Cepero had been to her house on several occasion in either 2015 or 2016 to pick up checks for work he had performed for the association. (Tr. at 200:19 – 201:22). Josue Cepero stated that on May 15, 2019, Marglli Gallego tried to block him twice. (Tr. at 71:10 – 71:13). He said the first time he was "blocked"; he was in a parking space and maneuvered the car and got out of the parking space. (Tr. at 72:23– 72:25). However, he said that he couldn't identify how far Marglli Gallego's car was from his. (Tr. at 71:20– 71:22). Absent from Mr. Cepero's testimony is any indication that Marglli Cepero tried to physically approach and/or contact the debtors on

May 15, 2019.

10. Jorge Matus, a supervisor of security for the Hammocks Community, testified that he was called by Marglli Gallego on May 15, 2019 because Ms. Gallego believed she was being followed. (Tr. at 97:22– 98:4) and (Tr. at 98:5– 98:8). He also stated the Ms. Gallego was just a few meters from the parking space to her own unit and that the Ceperos were blocking the parking unit to Ms. Gallego's unit. (Tr. at 93:14– 93:21).

11. Mr. Matus also stated that the Debtors' car was not blocked from behind by anybody, and that they could have backed up and moved the car. (Tr. at 98:9– 98:12). This fact was corroborated by Josue Cepero who testified under oath that he made the conscious decision to place his car in "park" and stay rather than attempt to leave. (Tr. at 76:4– 76:15).

12. Other than the Debtors and Marglli Gallego, there were no eyewitnesses that observed the incident on May 15, 2019. All witnesses, other than the Debtors and Marglli Gallego, arrived after the incident had already taken place. Debtors' Exhibit 22 (Respondents Ex. M) is a phone video taken by the Debtors on May 15, 2019 that show the vehicles already at rest. In it, the Debtor, Leticia Cepero, states, "we are not following her" ("Nosotros no seguimos detras de ella"). (Debtors Ex. No. 22/Respondent Ex. M at 00:10 – 00:13).

13. Debtor's Exhibit 23 (Respondents Ex. N) is also a phone video taken by the Debtors on May 15, 2019 that shows the Debtors taking a phone video while driving. During the video, Debtor, Leticia Cepero, remarks to Josue Cepero after she is instructed by him to call 911, "tomorrow I'm going to call them and tell them that I wasn't following her, she was the one that got in." ("mañana lo voy a decir. Yo no ando detrás de ella. Ella fue que se metió."). (Debtors Ex. No. 23/Respondent Ex. N at 00:10 – 00:13). The video itself starts with the Debtors apparently taking video of themselves driving and culminates when the Debtors (who are driving on the left side of the road) stop with the car driven by Marglli Gallego in front of them. (Debtors Ex. No. 23/Respondent Ex. N. 23). The video also shows Marglli

Gallego driving while on her phone looking ahead while the Debtors approach from the "wrong" side of the road and both vehicles intersect.

14. The evidence does not clearly or convincingly demonstrate that Respondents violated the Orders of this Court, nor does it clearly or convincingly demonstrate that the Respondents initiated contact with the Debtors on May 15, 2019. The evidence shows an interaction between the Debtors and Respondent, Marglli Gallego, on May 15, 2019; but testimony from Jorge Cepero and Marglli Gallego, as well as the Exhibits submitted for evidence in this case by all parties, demonstrate that all parties stayed away from each other after their vehicles came to rest in close proximity to each other in the Heron parking lot on May 15, 2019 at some time after 4 pm.

## THE LAWSUIT FILED IN NOVEMBER 2020

15. As stated by the U.S. Court of Appeals for the Ninth Circuit, "'knowledge of the applicability of the injunction must be proved as a matter of fact and may not be inferred simply because the creditor knew of the bankruptcy proceeding.'..." In re Dickerson, 597 B.R. 101 (Bankr. W.D. Wash. 2019)(citing Lorenzen v. Taggart (In re Taggart), 888 F.3d 438 at 443 (9th Cir. 2018)). There is nothing in the actual language of the orders nor of their history that denote a proscription against filing a lawsuit against the debtors by respondents.

16. Debtors have not provided any evidence to demonstrate that this Court's Contempt Orders provided a bar to any legal action by the Respondents. The Contempt Orders barred contact between the Respondents and Debtors and certain communications regarding the bankruptcy and financial situation of the Debtors. (ECF 189 and ECF 191).

17. The Contempt Orders did not contain any prohibition as to legal actions by "clear, definite and unambiguous" terms.   See, In re Cantin (Bankr. S.D. Fla. 2019); Jove Eng'g v. I.R.S., 92 F.3d 1539, 1545-46 (11th Cir. 1996), and In re SLK Associates, Inc., 166 B.R. 985 (Bankr. S.D. Fla. 1994).

18. Debtors did not seek relief pursuant to 11 U.S.C. § 362 (Although, it is mentioned in Debtors' closing argument but not reflected in the pleadings or pre-trial stipulation. (ECF 289, ECF 298, and ECF 324).

19. However, even if a 11 U.S.C. § 362 violation was properly pled, the facts show that Marglli Gallego is not a creditor in this case and not subject to the automatic stay (See, Schedules E and D/F of Debtors' Petition ECF No. 1 and Debtors' Ex. No. 21). As this Court is aware, the automatic stay does not apply to non-creditors absent special circumstances. See, In re Prairie Trunk Railway, 112 B.R. 924, 930 (Bankr.N.D.Ill.1990); and Nadler v. John Knox Vill. (In re Triad Constr. Co.), 545 B.R. 597 (Bankr. W.D. Mo. 2016).

20. Further, the complaint filed on November 2020 states causes of actions by Respondents against the Debtor, Leticia Cepero, to collect on postpetition debts for claims arising from statements made between 2018 and 2020. (See, Pages 3-5, Para. 19 and Pages 7-8, Para. 45 of Debtors' Exhibit 21). This would put these claims outside the purview of 11 U.S.C. § 362 because of the fact that this case was filed by Debtors on August 17, 2017. As noted by the Bankruptcy Court for the Middle District of Florida, 11 U.S.C. 362 (a) imposes a stay of actions relating to the collection of prepetition debts. See, In re Sciarrino, Case No. 9:11-bk-05881-FMD (Bankr. M.D. Fla. 2013)(The Court also noted that some postpetition actions may be stayed if they seek to collect funds/property from the bankruptcy estate.)

21. There was no evidence offered by Debtors' counsel that the causes of action stated in Debtors' Exhibit No. 21 were in any way pre-petition claims that would indicate a 11 U.S.C. § 362 violation, nor was there any evidence presented regarding the Complaint as a prohibited collection of post-petition claims from the bankruptcy estate.

22. Debtors' counsel merely asked, "Are you aware that you or the Hammocks are not allowed to file a lawsuit against either or both of the Ceperos while there are in bankruptcy?" (Tr. at 240:13 – 240:15). Whereby Marglli Cepero responded "No." (Tr. at 241:5).

**CONCLUSION**

23. For the aforementioned reasons, Repondents respectfully request that this Court find that Debtors have not proven their case by clear and convincing evidence and deny the sought-after relief.

CERTIFICATE OF SERVICE

I HEREBY CERTIFY that I am admitted to the Bar of the United States District Court for the Southern District of Florida and I am in compliance with the additional qualifications to practice in this Court set forth in Local Rule 2090-1(A) and that a true and correct copy of the foregoing was transmitted to the parties listed below:

Via electronic delivery on this 22nd day of March 2021 to:

Michael J. Brooks, Esq. on behalf of Debtors; pleadings@bankruptcynow.com, mbrooks@bankruptcynow.com;brooks.michaelr100502@notify.bestcase.com

Via electronic delivery on this 6th day of April 2021 to:

David E. Hicks, Esq. on behalf of Creditor JPMorgan Chase Bank, N.A.
tbyington@kelleykronenberg.com

Nancy K. Neidich
e2c8f01@ch13miami.com, ecf2@ch13miami.com

Office of the US Trustee
USTPRegion21.MM.ECF@usdoj.gov

Steven G. Powrozek, Esq. on behalf of Creditor Wells Fargo Bank, NA.
spowrozek@logs.com, LOGSECF@logs.com

Lindsey Savastano on behalf of Creditor Wells Fargo Bank, NA.
LSavastano@flwlaw.com, NJackson@flwlaw.com

/s/ Miguel Parlade
Miguel Parlade, Esq.
Fla. Bar. 388068
Attorney for Marglli Gallego and
Hammock Community Association
P.O. Box 771747
Miami, FL  33177
(305) 235-9040