UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

CASE NO. 17-20358-BKC-LMI
CHAPTER 13

IN RE:

JOSUE CEPERO
LETICIA CEPERO
     Debtor(s)

_____/

**DEBTORS' REPLY TO RESPONDENTS' CLOSING ARGUMENT ON DEBTORS'**
**AMENDED MOTION FOR CONTEMPT**

Debtors, JOSUE CEPERO and LETICIA CEPERO, hereby file this Reply to Respondents' Closing Argument pursuant to the Court's Order Setting Briefing Schedule for Closing Arguments (ECF 324), and states:

**SUMMARY OF REPLY**

Debtors did prove by clear and convincing evidence that on May 15, 2019, Respondents violated the unambiguous terms of the "stay away" provisions of Court's Orders (ECF 189 and 191) previously finding Respondents in contempt.  The evidence was clear and convincing for the simple reason that Respondents' version of the events, as detailed in Debtors Closing Argument, is beyond belief and impossible under the evidence presented to the Court.  To this end, regarding the impossibility of Gallego's story as to what occurred – including the fact that Respondents were at a bank at 4:17 PM, and the police were called 14 minutes later 4:31 PM – Respondents offer absolutely nothing in the Response to even attempt to rebut the impossibility of

1

Gallego's version.  In fact, detailed below, Respondents offer nothing whatsoever in response to the critical evidentiary items cited to by Debtors.

Regarding the lawsuit filed in November 2020, contentions that §362 was not "mentioned in the pleadings or pre-trial stipulation" (Response at ¶18) are completely false.  *See* Amended Motion for Contempt (ECF 289) at 6, ¶¶12-14, describing the defamation lawsuit that was filed and how Hilton Napoleon, the attorney who filed the lawsuit immediately withdrew the lawsuit upon learning that Leticia Cepero was in bankruptcy and of the prior Orders of contempt; and ¶15 specifically stating the allegations regarding the filing this lawsuit are "additional violations of US Bankruptcy Code Section 362 and the above-mentioned Orders."  Respondents' arguments, claiming that the November 2020 defamation lawsuit was proper as a post-petition matter by a non-creditor (Response at ¶¶19-21) are baseless and fly in the face of the undisputed evidence that: 1) the lawsuit was immediately dismissed when the attorney learned of the pending bankruptcy and contempt orders;[1] and 2) a November 2017 lawsuit against both Debtors and three other defendants presenting identical allegations was also immediately dismissed only as to the Debtors; and 3) The Hammocks Community Association Inc., a creditor in the bankruptcy case and subject to the prior Orders of this Court (ECF 198 and 191), was also a Plaintiff in the 2020 lawsuit.

In other words, according to the Respondents, both lawsuits were proper; but, both proper lawsuits were immediately dismissed.  As in the case regarding the May 15, 2019 incident, Respondents chose to avoid and not respond to the matters presented in

---

[1]  If, as argued, the lawsuit was proper, then why was it immediately dismissed?

Debtors' Closing Argument regarding Respondents' alleged lack of knowledge that the November 2020 lawsuit violated §362.

I.  Respondents failed to even attempt to respond to critical evidentiary items showing that Respondent's version of the May 15, 2019 incident was impossible and incredible.

In ¶4 of the Response, Gallego clings to the story that while picking up her son from school "before 4:00 PM," Debtors began to follow her; however, Respondents fail to even mention or attempt to rebut Ex.14, a bank receipt, date-stamped May 15, 2019 and time-stamped 4:17 PM (*See also* T. 54-55) conclusively establishing that the Debtors were at the Bank during the precise time-frame Gallego falsely alleges that Debtors came to her son's school and began to follow her vehicle.

In addition to avoiding this critical evidence debunking Gallego's story, Respondents also avoided and refused to even mention any of the following items, all of which, prove by clear and convincing evidence that Gallego's story is untrue:

1)  Exhibits M/22 and N/23 conclusively show Gallego's white vehicle obstruct Debtors vehicle by driving in front of Debtors and preventing their movement;

2) Exhibit L/24 proved that Ms. Gallego said: "María Alonso...Que se jodan, yo no me quito. [Maria Alonso...Screw them.  I'm not going anywhere.];"[2]

3) Exhibits L/24 and M/23 (Ms. Gallego casually leaving her vehicle while talking on the phone) demonstrate that Ms. Gallego was not nervous, as contended; and, that her son was nowhere to be found (unless he was left alone in the white vehicle);

4)  the testimony and other evidence showed that Ms. Gallego called security first, and that she did not call the police while in traffic (*See* Debtors' Closing Argument at 8, citing to Exhibit L/24 and T. 93; 98; and 195-196);

---

[2]  If, as contended, Debtors blocked in Gallego, why would Gallego say this?

5) based on Exhibit 14, Ms. Gallego could not have been followed by Debtors for one hour (Exhibit L/24) or even 30 minutes (police report, Exhibit 10);

6) testimony that the police instructed Ms. Gallego to take pictures or record video of the Debtors was false and belied by Exhibit L/24; and

7) despite emphatically claiming to the Court that she lived at 14921 SW 104th Street, she was equally emphatic to the 911 o'perater claiming that she did not live at this address.

These undisputed evidentiary items conclusively establish that: a) Ms. Gallego's version of the events is impossible and incredible; and b) Ms. Gallego's testimony about the events is replete with misrepresentations and false statements.  Based thereon, however the evidentiary threshold as described by Respondents, Debtors met that threshold.  Where there is substantial and competent evidence that Ms. Gallego blocked the Debtors, first in a parking spot, and then a second on the roads within the community that is corroborated by a video showing Ms. Gallego obstruct the path of Debtors presented; and, all that is offered in response is a version of events that is impossible, incredible and filled with false testimony contradicted by undisputed evidence, the clear and convincing threshold must certainly be met.

A.  None of the matters in the Response rebut the conclusion that Debtors proved a violation of the prior stay-away Orders entered "to prevent future altercations."

Without mentioning any of the critical matters listed above, Respondents set forth a summary of certain evidence and argument thereon.  However, none of this evidence rebuts the conclusion that Ms. Gallego made prohibited contact with Debtors and obstructed their movement in direct violation of the prior Orders; and, the arguments

4

presented upon this evidence are without merit.    For example, Respondents write, regarding the evidence and argument thereon, that:

Josue Cepero stated that on May 15, 2019, Marglli Gallego tried to block him twice.  (Tr. at 71:10 – 71:13).  He said the first time he was "blocked"; he was in a parking space and maneuvered the car and got out of the parking space.  (Tr. at 72:23– 72:25).  However, he said that he couldn't identify how far Marglli Gallego's car was from his.  (Tr. at 71:20– 71:22).  <u>Absent from Mr. Cepero's testimony is any indication that Marglli Cepero tried to physically approach and/or contact the debtors on May 15, 2019</u>.  Response at ¶9. [Emphasis added].

This argument seems to be a theme of the Respondents.  *See* Response at ¶4: "At no time during the incident did Mrs. Gallego attempt to make contact or communicate with the Debtors."  The idea that no violation would occur if Ms. Gallego blocked in the Debtors twice, but did not communicate with them is absurd.  Further, Ms. Gallego could not possibly block Debtors with "approaching" the Debtors.

The broad and unambiguous language of the two prior Orders at issue clearly included a prohibition of this type of conduct, especially where the stated purpose of the prohibition was "<u>to prevent further altercations</u>" between Ms. Gallego and the Debtors. *See* Order (ECF 191 at 2, ¶2).  Respondents' argument that this type of conduct does not violate the Orders is baseless.  An "altercation" of the precise type sought to be prevented by the Court did, in fact, occur on May 15, 2019.

Respondents' reliance upon statements made in Exhibit N/23 (Response at ¶13) is misplaced and improper.  First, when the two videos were introduced into evidence, during rebuttal, for the purpose of rebutting the claim by Ms. Gallego that Debtors were following her and blocked her in, Respondents contended that the audio portions on the videos were irrelevant.  *See* T. 288.  The Court agreed stating that the audio was going

to be disregarded. Further, the statement, as translated, is entirely consistent with Debtors' allegations – they did not follow Ms. Gallego; rather, she followed them.

Similarly, that Debtors held a letter (admitted as Exhibit F) to cover their faces after Ms. Gallego, while allegedly not making any contact with Debtors, blocked them and got close enough to their faces to photograph them (Response at ¶5) does and cannot possibly disprove the violation. That Exhibit F, as opposed to a towel or a newspaper, was used to cover their faces cannot possible alter the outcome that an obvious violation by Ms. Gallego of the stay-away provisions were violated. Nor can this alter the conclusions that Ms. Gallego's version of events of impossible and incredible; or that Ms. Gallego presented numerous instances of false statements) contradicted by undisputed evidence (*e.g.* I was followed by Debtors for "like on hour").

Finally, whatever the testimony of the police officer or others, Exhibit N/23 shows Ms. Gallego obstructing and blocking the Debtors. Nothing in ¶¶4-13 alters the fact that the evidence showed that Debtors were blocked twice, and that Debtors could not have possibly followed Ms. Gallego from the school as claimed. And, Respondents' contention that, even if the blocking was true, no violation occurred because "all parties stayed away from each other" (Response at ¶14) is without merit. Contempt, under the circumstances where the Court forbade any type of contact to prevent future altercations, cannot be avoided by providing false statements about what occurred followed by a portrayal of the events as a mere "interaction." *Id.* Even if all that occurred was an "interaction," which it was not, this is exactly what the Court prohibited.

II. Respondents' argument that the November 2020 lawsuit is proper and not violative of either §362 or the prior Orders is without merit.

6

As noted in the Summary, if the Respondents' position is somehow correct (that the November 2020 lawsuit is proper), it would illogically follow that Respondents filed two proper defamation lawsuits, one in November 2017 and the other in November 2020, yet immediately dismissed both lawsuits.  Curiously, the November 2017 was immediately dismissed, only as to the Debtors, but not the other three named Defendants.  *See* Exhibit 25, Complaint of 2017 lawsuit at 1, listing five named Defendants, including Debtors; and Exhibit 26, Docket Sheet of 2017 lawsuit, entry dated December 19, 2017 – Respondents voluntarily dismissed the Debtors.

As alleged in the Amended Motion (ECF 289), and apparently not disputed, once the lawyer that filed the lawsuit for Respondents was notified of the Debtors' bankruptcy and the prior Orders of contempt, the November 2020 lawsuit was immediately dismissed by Respondents.  If, as contended, the November 2020 lawsuit was proper, it would only follow that the November 2017 lawsuit (filed post-petition) was also proper. The Respondents' argument then begs the question: why were both lawsuits, allegedly proper in all respects, immediately dismissed as to the Debtors?

It is clear in this jurisdiction that a creditor cannot take property of the estate without relief from stay.  It is also clear that a non-creditor cannot take property of the estate without relief from stay.  *In re: Kolenda*, 212 B.R. 851 (W.D. Mich. 1997).  Income or assets of the Debtor's necessary to fund the chapter 13 plan are property of the estate.  The "Wherefore" clause of the 2020 lawsuit seeks damages against the Debtors.  If successful in that case, the Plaintiffs could attempt to garnish wages or levy against the Debtors which would make it impossible for the Debtors to complete their plan payments.

Additionally, the Order on Contempt specifically states: "Ms. Gallego shall refrain from any further contact with the Debtors, Josue and Leticia Cepero, during the bankruptcy, and until such time as the bankruptcy has been discharged and/or dismissed. During such time, there shall be no communication from, Marglli Gallego, individually, or in her capacity as the president of the Hammocks Community Association Inc., with reference to the bankruptcy filed by Josue and Leticia Cepero, the Debtors' debts, the Debtors' creditors or any other business relationships the Debtors may have relating to the Bankruptcy. This includes a prohibition against Marglli Gallego, individually, to approach the Debtors, to communicate with or about the debtors, in person, or in writing, or with any other Association members, including but not limited to, from communicating to anyone regarding any matter relating to the bankruptcy, the Debtors' failure to pay maintenance payments, or any other financial matters of the Debtors."(ECF 191).

A lawsuit against the Debtors is a communication with or about the debtors, in person or in writing or with any other Association members contemplated by the Order. Also, the language in the Order specifically excludes the Respondents defense that Marglli Gallego was a non-creditor in this case not subjection to the jurisdiction of this Court. She made herself subject to the jurisdiction of this Court by her prior behavior. Therefore, none of the case law cited by the Respondent is relevant in this case.

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that I am admitted to the Bar of the United States District Court for the Southern District of Florida and I am in compliance with the additional qualifications to practice in this Court set forth in Local Rule 2090-1 (A) and that a true and correct copy of the **DEBTORS' REPLY TO RESPONDENTS' CLOSING ARGUMENT ON DEBTORS' AMENDED MOTION FOR CONTEMPT** was sent via email to Marglli Gallego and Hammocks Community Association, INC Attorney, Miguel F. Palade,parladelaw@gmail.com and NANCY NEIDICH Chapter 13 Trustee and all those set forth in the NEF on this 6th day, of April 2021.

GBHB d/b/a BankruptcyNow
Attorneys for the Debtor
8410 SW 40th Street
Miami, FL 33155
Telephone (888)811-8989


By   /s/   Michael J. Brooks
    Michael J. Brooks
    Florida Bar No. 434442