**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF FLORIDA**
www.flsb.uscourts.gov

In Re:                                                                    Case Number: 17-20358-LMI
                                                                          Chapter 13
JOSUE CEPERO and
LETICIA CEPERO

　　　　　　　　　Debtor(s)　　/

## OBJECTION TO DEBTOR'S STATEMENT OF DAMAGES ON ORDER OF CONTEMPT

Respondents, Hammocks Community Association, Inc. and Marglli Gallego, object to the Debtor's Statement of Damages on Order of Contempt and in support thereof state:

1. On July 17, 2021, this Court entered an Order finding Respondents in contempt for violating its Orders dated December 3, 2018, and December 6, 2018 (ECF 189 and ECF 191, respectively); and on Debtor's Amended Motion for Contempt (ECF 289). *(ECF 328).*

2. Specifically, this Court determined whether Respondents violated the aforementioned Orders in reference to an event that occurred on May 15, 2019 confrontation between Marglli Gallego and Debtors in the Hammocks parking lot and the filing a lawsuit by Respondents against the debtors on November 2020. *See, ECF 328.*

3. This Court held that Respondents violated this Court's stay away orders (ECF 189 & 191) during the May 15, 2019 incident, but did not violate the Orders by filing the November 2020 lawsuit. However, this Court found that the filing of the lawsuit on November 2020 was a violation of the automatic stay. *See, ECF 328.*

4. In the Order, this Court stated "The Amended Contempt Motion seeks attorney's fees and reimbursement cost (including those associated with the November 2020 Lawsuit),

punitive damages, and damages for emotional distress. The Debtors did not city any statute or common law basis for the sanction they seek leaving it to the Court to guess why they are entitled to recovery. However, the Court specifically advised the parties that the Court would consider evidence of damages after a determination of liability, if any." (ECF 328).

5. On August 9, 2021, Debtors' counsel filed a Statement of Damages on Order of Contempt (ECF 335), detailing what they believe to be appropriate damages. In it they requested this Court assess costs and attorney's fees, punitive damages, and damages for "emotional distress".

6. In support thereof, Debtors cited various cases stating that the relief they seek is warranted but give no statutory authority or common law authority for the relief sought and have no evidentiary foundation.

7. Pursuant to this Court's Order, Respondents hereby object to the Debtors' Statement of Damages and specifically states the specific objections more fully:

8. On February 11, 2021, upon the commencement of the rebuttal case by Petitioner's this Court noted upon Petitioner's attempt to call Petitioner's attorney to testify as to the amount of attorney's fees spent in this case,

> MR. ARSLANIAN: Your Honor, I would ask that if Mr. Brooks was going to testify about time spent, is Your Honor -- and Josue was going to testify about the money spent, if Your Honor would rather wait till the end of the case to hear that, or proceed now? I can do either one.
>
> THE COURT: I'm not sure what the purpose of that testimony is.

> Is that for damages?
>
> MR. ARSLANIAN: Yes, Your Honor.
>
> THE COURT: If I rule that there are damages, then we'll get to the damages portion. But I will say this: I will review attorney time. I don't need testimony as to that. I have a procedure for that.

(ECF 321, Tr. at 160:10 – 160:23).

9. Debtors' cite caselaw stating that "[i]n the context of contempt or violation of the stay provisions, Debtors are entitled to an award of attorney's fees and costs limited to the time reasonable and necessary to enforce compliance." (citing *In re Rhodes, 563 B.R. 380, 390-391 (M.D. Fla. 2017)*. *(See, page 2 of ECF 335)*.

10. Debtors' counsel fails to assert any statutory basis, common law, or evidentiary basis for its assertion that they are entitled to the relief sought.

*11.* All courts have inherent contempt powers to protect itself as an institution and to ensure compliance with its orders. *See, Young vs. United States ex rel Vuitton et Fils S.A., 481 U.S. 787, 796 (1987); and Alderwoods Grp. v. Garcia, 682 F.3d 958, 970(11th Cir. 2012)*.

II. Attorney's Fees:

12. Debtors state that they are "entitled to an award of attorney's fees and costs, limited to the time reasonable and necessary to enforce compliance." *(Para 1, Page 2 of ECF 335)*.

13. Debtors do not cite this Court's statutory authority for reimbursement of those fees and costs.

14. In support of their Statement of Damages on Order of Contempt, debtors' counsel attach a time sheet for Michael Brooks, a time sheet for Louis C. Arslanian, and a Cepero Cost Sheet. *(See, Exhibits 1-3 of ECF 335)*.

15. The time sheet for Michael Brooks is unreasonable and contains charges for time spent on matters unrelated to the matter at bar. In particular,

16. **ATTORNEY TIME SHEET**

| DATE | REASON | TIME |
|---|---|---|
| 9/17/2020 | Met with Debtor to talk about takin over case | 1.5 |
| 9/18/2020 | Spoke with Debtor's son on the phone | .2 |
| 9/22/2020 | Spoke with counsel for Gallego regarding communication with Association for renovations to unit | .2 |
| 9/22/2020 | Spoke with Debtor regarding roof. Received email with release forms | .4 |
| 9/22/2020 | Sent email to Miguel Parlede regarding roof | .1 |
| 9/22/2020 | Sent approved roof title list to debtor | .1 |
| 9/23/2020 | Received email from Miguel Parlede that he received from Association. Forwarded to Debtor | .1 |
| 9/24/2020 | Received another email from Miguel regarding roof and survey sent to Debtor. S Oke with Debtor to tell them wh the needed a surve | .4 |
| 9/24/2020 | Received another call from Debtor and another email | .2 |
| 9/24/2020 | Had to call regarding talking about Association to state Attorney | .6 |
| 10/2/2020 | Email with Association about roof. Spoke to Debtor | .3 |
| 10/2/2020 | Tried to resolve dispute regarding roof color. Spoke with Amanda and exchanged emails. Spoke with Debtor to get clarification | .5 |
| 10/5/2020 | Sent email to Miguel Parlede to verify that I had consent to speak with Association directly | .1 |
| 10/5/2020 | Communicating with Amanda regarding door | .2 |
| 10/5/2020 | Spoke with Debtor regarding door, roof and time limits. Leaks to interior of house | .5 |
| 10/6/2020 | Spoke to Debtor regarding liability insurance | .2 |
| 10/6/2020 | Read proposed email from Debtor to Association. Called them and scheduled appointment for 10/9/2020 | .2 |
| 10/9/2020 | Met with Debtor explained everything regarding permits and insurance | 1.5 |

| | | |
|---|---|---|
| 10/13/2020 | Sent pictures of acceptable roof title to Hammocks | .1 |
| 10/13/2020 | Requested approval for roof from Association and spoke with Hammocks again regarding notice of application for front door | .3 |
| 10/13/2020 | Spoke with Debtor regarding NOA for front door | .2 |
| 10/13/2020 | Received email form Debtor regarding roof and belief that Association is delaying on purpose | .2 |
| 10/15/2020 | Sent NOA for door and sent to Amanda | .1 |
| 10/15/2020 | Sent email to Miguel Parlede regarding roof approval | .1 |
| 10/15/2020 | Received approval for roof and sent it to Debtor | .1 |
| 10/22/2020 | Sent email to Hammocks regarding approval for door and asking why it's taking so long. Called several times and no answer | .2 |
| 10/26/2020 | Sent email to Miguel Parlede regarding approval for door after talking to Debtor | .3 |
| 10/29/2020 | Received approval for door and sent it to Debtor | .1 |
| 11/1/2020 | Sent application for garage permit to Association | .1 |
| 11/3/2020 | Spoke to Debtor regarding garage door | .1 |
| 11/5/2020 | Received email from the association regarding color of garage door. Spoke with Debtor | .1 |
| 11/9/2020 | Sent email to Debtor regarding color. Spoke with Debtor | .3 |
| 1 1/10/2020 | Received email from Association regarding pictures of home and release form | .1 |
| 11/11/2020 | Sent garage door permit to Association | .1 |
| 11/12/2020 | Received garage door approval and sent to Debtor | .1 |
| 12/1/2020 | Met with Debtor | 1.2 |
| 12/5/2020 | Sent permit request to Association for driveway | .1 |

| | | |
|---|---|---|
| 12/22/2020 | Spoke with Debtor regarding insurance for driveway | .1 |
| 12/28/2020 | Met with Clients regarding case | 1.2 |

| 7/20/21 | Met with the Cepero's to discuss medical records | 1.20 |
|---------|---------------------------------------------------|------|
| 7/20/21 | Josue Cepero dropped off his medical records. Reviewed and sent to Louis Arslanian | .4 |
| 7/20/21 | Spoke with Leticia Cepero to get medical records | .2 |

| 8/2/21 | Josue Cepero dropped off medical records for Leticia Cepero. They were her general physicians records, not from psychiatrist | 1.2 |
|--------|----------------------------------------------------------------------------------------------------------------------|-----|
| 8/4/21 | Spoke with Leticia Cepero to get medical records before Friday | .2 |
| 8/6/21 | Spoke with Josue Cepero. Receipt and review of Leticia's therapist notes | .75 |

    Total of unrelated hours:        16.45 hours

17. To determine the reasonableness of attorney's fees courts use the lodestar analysis and then multiply the attorney's reasonable hourly rate by the number of hours reasonably expended. *Grant v. George Schumann Tire & Battery Co., 908 F.2d 874 (11th Cir. 1990)(citing Hensley v. Eckerhart, 461 U.S. 424, 433, 103 S.Ct. 1933 1939, 76 L.Ed.2d 40 (1983))*.

18. The lodestar calculation is a tool whereby the bankruptcy court considers twelve factors in order to adjust fees as set forth in *Johnson v. Georgia Highway Express, Inc., 488 F. 2d 714 (5th Cir. 1974)*.

19. These twelve factors are:

    a)    The time and labor required,
    b)    The novelty and difficulty of the questions,
    c)    The skill requisite to perform the legal service properly,
    d)    The preclusion of other employment by the attorney due to acceptance of the case,
    e)    The customary fee,
    f)    Whether the fee is fixed or contingent,
    g)    Time limitations imposed by the client or the circumstances,
    h)    The amount involved and the results obtained
    i)    The experience, reputation, and ability of the attorneys,
    j)    The "undesirability" of the case,
    k)    The nature and length of the professional relationship with the client, and
    l)    Awards in similar cases

*See, Johnson v. Georgia Highway Express, Inc.,Id.*

20. Debtors' counsel has submitted two different time sheets in support of their request for attorney's fees. These time sheets request $550.00/hour for all work performed.

21. Debtors' counsel has not presented any evidence to establish the reasonableness of the fees being sought.

22. It is inexorable that "the burden of proving the reasonableness of attorney's fees is upon the applicant." *In re Bond, 249 B.R. 891 (C.D. Ill. 2000)(citing In re Kenneth Leventhal & Co., 19 F.3d 1174, 1177 (7th Cir.1994); In re Price, 143 B.R. 190, 192 (Bankr.N.D.Ill. 1992).*

23. Respondents object to the claimed hourly rate of $550.00/hour for all work performed in that the amount is unreasonable, incommensurate with the experience/reputation/ability of the attorneys involved, incommensurate with the customary fees,

24. Further, "Attorneys should not be awarded their standard hourly rates for performing such routine tasks as proofreading and cite-checking. These activities are compensable at lower, non-legal rates no matter who does them." *In re Bond, 249 B.R. 891 (C.D. Ill. 2000)(citing In re Jensen-Farley Pictures, Inc., 47 B.R. 557, 583 (Bankr. D.Utah 1985).*

25. Many of the billing entries are vague, general, confusing, and unreasonable, for example: Michael Brooks, Esq. Attorney Time Sheet contains entries such as the following:

| | | |
|---|---|---|
| 9/17/2020 | Met with Debtor to talk about takin over case | 1.5 |
| 9/30/2020 | Received transcript from prior hearing | 2.2 |
| 12/1/2020 | Met with Debtor | 1.2 |
| 12/28/2020 | Met with Clients regarding case | 1.2 |
| 1/26/2021 | Reviewed file, Re-read transcript, Spoke with Debtor to set up deposition for 1/28 | 2.0 |

| 1/28/2021 | Attended Deposition and met with clients after Deposition | 4.0 |
|---|---|---|
| 2/3/21 | Met with Louis Arslanian to review all exhibits to discuss how we want trial to go | 3.5 |

| 2/5/2021 | Met with Debtor's to discuss case | 2.5 |
|---|---|---|
| 2/9/2021 | Met with Debtor's to review case with Louis Arslanian | 3 |
| 2/10/2021 | Organize and prepared for trial | 6 |
| 2/11/2021 | Trial | 5 |
| 2/12/2021 | Trial and research on punitive damages | 2.5 |
| 2/23/2021 | Receipt and review of court transcript | 2.2 |
| 3/2/2021 | Motion to allow 911 recording transcript to be admitted | 5 |
| 3/6/2021 | Prepared and reviewed closing argument | 5 |
| 3/7/2021 | Prepared and reviewed changes to closing argument | 1.2 |
| 3/8/2021 | Finalized closing argument | 2 |
| 7/20/21 | Met with the Cepero's to discuss medical records | 1.20 |
| 7/20/21 | Josue Cepero dropped off his medical records. Reviewed and sent to Louis Arslanian | .4 |
| 7/20/21 | Spoke with Leticia Cepero to get medical records | .2 |
| 7/24/21 | Met with Cepero's to discuss case and final brief | 3.50 |

| 8/2/21 | Josue Cepero dropped off medical records for Leticia Cepero. They were the general physicians records, not from psychiatrist | 1.2 |
|---|---|---|
| 8/8/21 | Numerous conversations with Louis Arslanian to discuss and edit Closing Statement | 2.5 |

Louis C. Arslanian, Esq. Attorney Time Sheet contains entries such as the following:

12/8/20          Received transcript of original trial (2/26/20)

Initial Read and review of transcript

Discuss matter with Brooks.                                                                 1.5

| Date | Description | Hours |
|------|-------------|-------|
| 1/28/21 | Meeting with Diane Pico, review of documents Preparation for Deposition, attend Deposition of Ms. Pico, and Meeting with Clients re: trial; Brooks Provided me with a pleading/motion file containing Prior Contempt motion, Orders on same and related Documents, including Exhibit Books for review and trial preparation. | 4.5 |
| 2/3/21 | Review of Exhibits of both parties, viewing of Video Exhibits, detailed reading of trial transcript From First Day of Trial, compiling a summary of Testimony from first page-by-page for reference At continuation of trial. | 5.5 |
| 2/4/21 | Review of Docket Miami-Dade County of prior Lawsuits between the parties and related litigation, read and review Complaints for comparison of allegations, Docket Review for dismissal of cases. | 2.0 |
| 2/9/21 | Meeting with M. Brooks to discuss overall Trial Strategy. | 3.0 |
| 2/10/21 | Preparation for trial, review of all Exhibits and Documents, Trial Transcript For Cross-X of Marglii Gallego, preparation for testimony Diane Pico (additional witness), preparation of Questions for Ms. Gallego. Preparation for Rebuttal, and arguments thereon based upon Anticipated testimony of Marglii Gallego. | 5.0 |
| 2/11/21 | Attend Trial, Day 2. Arguments regarding Diane Pico (who did not appear), admission Of Tree Letter, Direct and Cross examination | |

| | |
|---|---|
| Of Ms. Gallego. | 4.5 |
| 2/11/21 Review of Pico Depo Transcript, first day of trial Transcript. Prepare motion for reconsideration Of Ruling that Tree Letter would not be admitted. | 2.5 |
| 2/12/21 Attend Trial, Day 3. Argument on Motion for Reconsideration, submission of Rebuttal Exhibits Argument regarding rebuttal exhibits. | 2.0 |
| 3/28/21 Read and review Respondents' Closing argument, Legal research on case law cited by Respondents (stay order violation by non-creditor), Draft of Reply Closing Argument Memo. | 4.0 |
| 8/7/21 Read and review Order of Contempt, various Legal authorities regarding damages for Contempt Or Stay Violations, Draft of Damage Statement | 3.5 |

26. In addition, Debtors' counsel seeks duplicative compensation for fees for both attorneys.

27. For example, although they are from the same firm, both attorneys have charges for preparing for trial, preparing for depositions, attending trial, attending depositions, preparing arguments, revising arguments, having conversations/conferences, etc. *See also, notations on 1/18/21 by Brooks (0.4) and Arslanian (0.25) to prepare for hearing on Motions to Reopen, notations on 1/28/21 by both Brooks (4.0) and Arslanian (4.5) for meeting with clients, prep for deposition, and attendance at deposition, notations on 2/3/21 by Brooks (3.5) and Arslanian (5.5) for reviewing exhibits, notations on 2/10/21 for Brooks (6) and Arslanian (5) to prepare for trial, in addition to many other entries where both attorneys are billing for the same service performed. (ECF 335-1 and 335-2 respectively).*

28. Where multiple attorneys are the working on the same matters, the requested fees should be carefully scrutinized to ensure that compensation is not allowed for an "unnecessary

duplication of services". *In Re First State Bancorporation, 2014 WL 1203141 at \*4 (Bankr. D.N.M. March 24, 2014). See also In re Brous, 370 B.R. 563, 573 (Bankr. S.D.N.Y. 2007)("The estate did not require two sets of lawyers overseeing [a] transaction…The fees pertaining to these duplicative (and sometimes vaguely described) services will be disallowed, subject to two exceptions.").*

WHEREFORE, Respondents object to the attorney's fees claimed by Debtors' counsel as unreasonable, unnecessary, unrelated to the matter at bar, and duplicative.

### III. Costs

29. Respondents object to Debtors' claimed costs *(ECF 335-3)*. Specifically, Debtors seek reimbursement for paid attorney's fees as a cost. However, they are also seeking reimbursement for those same attorney's fees.

WHEREFORE, Respondents object to the aforementioned costs listed by the Debtors.

### IV. Punitive Damages

30. Debtors do not state any statutory basis for their claims for punitive damages, but list precedent as support for their claim for punitive damages for both violation of this Court's "stay away" orders *(ECF 189 & 191)* and the automatic stay provisions of 11 U.S.C. § 362.

31. Further, Debtors state that this Circuit has adopted a five-factor test to determine if an award of punitive damages is warranted: "1) the nature of the [defendant]'s conduct; 2) the nature and extent of the harm to the plaintiff, 3) the [defendant]'s ability to pay; 4) the motives of the defendant; and 5) any provocation by the debtor." *(See, Para 2, Page 4 of ECF 335)(quoting In Re Harrison, 599 B.R. 173, 182 (Bankr. N.D. Fla 2019)).*

32. Debtors further cite that punitive damages are appropriate where "the violator acts in an

egregious intentional manner…where a violator's acts are egregious, malicious or accompanied by bad faith." *(See, Para 2, Page 4 of ECF 335)(quoting In Re Roche, 361 B.R. 615, 624 (Bankr. N.D. Ga 2005).*

33. This Court found that Respondents violated this Court's "stay away" orders by blocking the debtors' vehicle as they drove in front of the building where Respondent Marglli Gallego resides and by filing a lawsuit in November 2020 in violation of the bankruptcy automatic stay provisions. *(ECF 328)*

34. Debtors' counsel failed to offer evidence of any harm suffered by the Plaintiff, other than the inconvenience of the acts themselves. In the first instance, the debtors' car was impeded by Respondents' vehicle. In the second instance, a lawsuit was filed by the Respondents on November 30, 2020 against Debtor Leticia Cepero. This lawsuit was dismissed on December 10, 2020.

35. Debtor's counsel failed to offer any evidence as to the Respondents' ability to pay. (Although Debtors' counsel seems to make the argument that a filing that was made to Court docket February 9, 2021 (ECF 303) as to Respondent's, Hammocks Community Association, approved budget; this was never submitted into evidence in this case.)

36. Further, Debtors' counsel failed to offer any evidence as to the motives of Respondents in committing the act. As noted by the 11th Circuit United States Court of Appeals, there must exist a finding as to the "mens rea" with respect to the commission of an act, and not in regard to the actual "legal effect" of the commission of the act vis-à-vis the prohibitive order/law. *See, McLean, 515 B.R. at 851 (citing Keen v. Premium Asset Recovery Corp.(In Re Keen), 301 B.R. 749, 755 (Bankr. S.D. Fla. 2003); and Green Point Credit, LLC v. McLean (In re McLean), 794 F. 3d 1313, 1325 (11th Cir. 2015).*

37. This Court noted that there was an order that Debtors were to stay away from Respondents and vice-versa. (*See, final paragraph, Page 12 of this Court's Order Finding Hammocks Community Association, Inc. and Marglli Gallego in Contempt, ECF 328*).

38. Witness Jorge Matus, the security supervisor for the Hammocks community, testified that the debtors' vehicle was only "a few meters away from the apartment – from Ms. Gallego's apartment"; during the May 15, 2019 incident *(ECF 255, Tr. at 97:19 – 98:1)*.

39. The undisputed fact that Debtors were in close proximity to Respondents' residence is indicia of provocation on behalf of the debtors.

40. Furthermore, "[b]ecause punitive sanctions are for offenses already completed, they take on the character of criminal punishment and render the contempt criminal in nature." *Green Point Credit, LLC v. McLean (In re McLean), 794 F. 3d 1313, 1325 (11th Cir. 2015)(citing Int'l Union, United Mine Workers of Am. v. Bagwell, 512 U.S. 821, 827 (1994))*.

41. "Whether the award is coercive or punitive determines the level of process that a court owes an alleged contemnor in prosecuting the contempt..." *Green Point Credit, LLC v. McLean (In re McLean), 794 F.3d 1313 (11th Cir. 2015)*.

42. As stated by the Eleventh Circuit Court of Appeals, coercive sanctions "cannot be any greater than necessary to ensure such compliance and may not be so excessive as to be punitive in nature." *See, Green Point Credit, LLC v. McLean (In re McLean), 794 F.3d 1313 (11th Cir. 2015)(quoting Jove Engineering, Inc. v. Internal Revenue Service, 92. F.3d 1539, 1558 (11th Cir. 1996))*.

43. *"Conversely, '[c]riminal contempt is a crime in the ordinary sense,' and so due process*

requires more stringent protections in criminal contempt proceedings.'" *Green Point Credit, LLC v. McLean (In re McLean), 794 F.3d 1313 (11th Cir. 2015)(quoting Int'l Union, United Mine Workers of Am. v. Bagwell, 512 U.S. 821, 827 (1994))*.

44. Debtors have failed to plea and provide evidence as to why the issuance of punitive damages would be proper, and the due process that is afforded to a contemnor who is sought to be punished has not been observed. *See, Green Point Credit, LLC v. McLean (In re McLean), 794 F.3d 1313, 1324-25 (11th Cir. 2015)*

45. Debtors have not proven a prima facie case for punitive damages in their case in chief. Thusly, Debtors claim for damages for punitive damages must be denied.

WHEREFORE, Respondents object to the claim for punitive damages.

## V. Emotional Distress

46. In order to recover damages for "emotional distress" the movant "must (1) suffer significant emotional distress, (2) clearly establish the significant emotional distress, and (3) demonstrate a causal connection between that significant emotional distress and the violation." *Green Point Credit, LLC v. McLean (In re McLean), 794 F. 3d 1313, 1325 (11th Cir. 2015)(quoting Lodge v. Kondaur Capital Corp., 750 F.3d 1263, 1271 (11th Cir. 2014)*.

47. Debtors have submitted no evidence for their claim of emotional distress.

48. Debtors have not proven a prima facie case for emotional distress in their case in chief. Thusly, Debtors claim for damages for emotional distress must be denied.

WHEREFORE, Movant respectfully requests that this Court enter an order sustaining this objection and grant such further relief as the Court deems appropriate.

CERTIFICATE OF SERVICE

I HEREBY CERTIFY that I am admitted to the Bar of the United States District Court for the Southern District of Florida and I am in compliance with the additional qualifications to practice in this Court set forth in Local Rule 2090-1(A) and that a true and correct copy of the foregoing was transmitted to the parties listed below via electronic delivery on this 30th day of August 2021:

Michael J. Brooks, Esq. on behalf of Debtors; pleadings@bankruptcynow.com, mbrooks@bankruptcynow.com;brooks.michaelr100502@notify.bestcase.com

David E. Hicks, Esq. on behalf of Creditor JPMorgan Chase Bank, N.A.
tbyington@kelleykronenberg.com

Nancy K. Neidich
e2c8f01@ch13miami.com, ecf2@ch13miami.com

Office of the US Trustee
USTPRegion21.MM.ECF@usdoj.gov

Steven G. Powrozek, Esq. on behalf of Creditor Wells Fargo Bank, NA.
spowrozek@logs.com, LOGSECF@logs.com

Lindsey Savastano on behalf of Creditor Wells Fargo Bank, NA.
LSavastano@flwlaw.com, NJackson@flwlaw.com

/s/ Miguel Parlade
Miguel Parlade, Esq.
Fla. Bar. 388068
Attorney for Marglli Gallego and
Hammocks Community Association
P.O. Box 771747
Miami, FL  33177
(305) 235-9040
parladelaw@gmail.com