**HENRY M. STORPER, M.D., P.A.**
9275 S.W. 152ND ST., SUITE 108B
MIAMI, FLORIDA 33157
———
(305) 252-0533
FAX (305) 252-0575

HENRY M. STORPER, M.D.
DIPLOMATE AMERICAN BOARD OF
PSYCHIATRY AND NEUROLOGY
FRAN STORPER, M.S.W.

12/13/2021
Miguel F. Parlade, Esq.
Law offices of Miguel Parlade, P.A.
P.O. Box 771747
Miami, FL 33177
Re: Leticia Cepero
DOB: 05/28/1959

The following is an independent medical examination of Leticia Cepero conducted by me on 12/13/2021.

The patient was seen by telepsychiatry on the above date. The following is a report of that evaluation. She is a 62-year-old latin female, who was referred for an evaluation because of allegations in a lawsuit that an incident caused a number of mental health symptoms. The patient was advised that this examination was for evaluation purposes and that no treatment would be offered. She was also informed that the information in the report was not strictly confidential but would be included in the report sent to both attorneys and to the court. She understood and agreed to all of the above circumstances and conditions. In addition, a translator Alicia Dimetriou was present throughout, because M. Cepero does not speak English, and I do not speak Spanish.

**HISTORY OF PRESENT ILLNESS:**
The issue at hand, centers around an episode which occurred on May 15, 2019. There had been a history of conflict between the Ceperos, the homeowners association, and Ms. Gallego. There are different versions as to what occurred. I will present the version of the Ceperos. She states that she was on her way to visit a friend (Alicia) to congratulate her on her recent electoral victory. She and her husband stopped at the bank and then drove, without any further stops and parked near Alicia's home. She reports that they were confronted in their car by Ms. Gallego and security from the homeowner's

association. It is her view, that they were held hostage for hours and were not permitted to leave or get out of her vehicle. Ultimately, the police was called by both sides and the police came promptly within 5-10 minutes of the initial confrontation.

Ms. Cepero states that she did not want to exit her vehicle because she felt that her life was in danger. She believed that she would be harmed either by Ms. Gallego or by the security officers. During this time, her exit from her car was not blocked and she could have opened her door at any time. She chose to remain inside. Further, there was an episode when her husband tried to drive away, was able to do so but could not find an exit promptly. He decided to remain in place to try and settle the issue. When talking about this incident, Ms. Cepero becomes extremely agitated and hyperverbal. She raises her voice, on multiple occasions, in a way, that is hard for anyone else to speak. In any event, she felt that she was about to be harmed, felt threatened and believed herself to be in danger.

- This incident was another example of an ongoing conflict that had occurred between the Ceperos and Ms. Gallego, 1-2 years prior to this episode. It is Ms. Cepero's belief that she was traumatized during this episode and that her symptoms stem from this encounter. Her current symptoms include, anxiety, feelings of sadness, worthlessness, anhedonia, and difficulty with sleep onset and continuity. She further reports impaired concentration and difficulty with being able to function.

**PSYCHIATRIC HISTORY:**

The patient sought psychiatric help from Oscar Pozo, M.D. on June 23, 2020. She saw him again on February 19, 2021, and August 3, 2021. She has been prescribed Effexor XR 37.5mg, per day, and Klonopin 1mg, twice daily, as well as Melatonin in low dosage. She states that she had been offered other medications but rejected them as she does not believe that "medicine is good for you". She is concerned about dependency issues. She has no prior psychiatric history.

In addition, she saw Frances Peña, a clinical social worker for ongoing psychotherapy. She saw Ms. Peña in April 2020, and continued to see her through July 2021. She has been diagnosed with Adjustment disorder and PTSD by Ms. Peña. Dr. Pozo's diagnosis is: Acute stress reaction, Major Depression recurrent, and Generalized Anxiety disorder. She has an appointment with Dr. Pozo in the short-term future. There is no history of prior or inpatient mental health care.

### MEDICAL HISTORY:

The patient has an extensive medical history and her primary care physician is Reinaldo Hernandez. She has been prescribed the following medications: metoprolol, thyroid, losartan-k, hctz, omeprazole, and Calcitrol. She has a history of thyroid surgery, as well as removal of two malignant colonic polyps. She is treated for hypertension, and also reports from thrombocytopenia. She also notes that she had surgery with regard to her lymph nodes.

### DRUG AND ALCOHOL USAGE:

The patient denies usage of drugs and alcohol.

### CAFFEINE USAGE:

The patient drinks Cuban coffee, half cup, per day. She has reduced this from 3 cups, per day, because she suffered from gastrointestinal side effects.

### SOCIAL HISTORY:

The patient was born in Cuba, and came to the United States, with her husband and child. While growing up, she states that she studied in Europe, Africa, as well as Cuba, receiving a PhD in psychology. After immigrating to the United States and living in Miami, she obtained a Master's in psychology. Her professional career has been involved as a psychologist working for private practitioners and a number of county agencies. Her last employment was the JAP behavioral center where she worked for 6 months. She states that she has had difficulties with work because of ongoing panic attacks.

### MENTAL STATUS EXAM:

The exam reveals a well-developed, well-nourished female in moderate distress. Speech is of normal rate and rhythm, articulation is normal and speech is spontaneous and coherent. Her speech becomes very loud and hyperverbal. She becomes agitated when recounting the dispute with the HOA. I had to ask her several times to modulate her volume, and to let me speak.

With regard to her affect, It is labile, anxious, angry and irritable. Her behaviors are described above. There is no evidence of harm to self or others.

With regard to her thoughts, they are circumstantial and tangential with long periods of verbalization that are quite tangential to the question I asked her. It is extremely difficult for her to answer questions directly without becoming hyperverbal, circumstantial, and tangential. There are persistent obsessive ruminations about this conflict. She manifests significant paranoid persecutory ideation, in which she believes that she and her family will be harmed or possibly killed, by employees of the homeowner's association and by Ms. Gallego, in particular. There are no auditory or visual hallucinations or ideas of reference. She is concerned about suspicious items in the neighborhood such as a gunshot going off, and the fact that her peacock was killed by a dog which she hints at assigning blame for but never quite completes the accusation.

With regard to her sensorium, she is oriented to time, place and person. Recent and remote memories are generally intact. Attention span and concentration are reduced. She is unable to abstract and unable to do serial sevens. Fund of general information is fair. Judgement and insight are fair. Proverb and interpretation and logic are fair.

**DIAGNOSTIC IMPRESSION:**
Acute situational reaction
Generalized anxiety disorder with significant obsessive ruminations
Mood disorder, unspecified

**DISCUSSION:**
This patient clearly has a variety of symptoms which have been inadequately treated, in part, due to the patient's lack of cooperation with accepting proper care. She has a severe sleeping problem for which she refuses effective treatment using tiny doses of Klonopin or small doses of melatonin which of course are inadequate to help her. She is up at night, ruminating about her difficulties. She resists appropriate interventions, which make all of her symptoms worse.

I disagree with the diagnosis of Post-traumatic stress disorder. She has had severe situational difficulties with the other parties. The event of May 15, 2019 did not materially change it. In fact, as time has gone on, she has felt worse because of further helplessness and her inability to participate in appropriate care. She does not meet criteria for PTSD, in my view. Although, she believes her life may be threatened, there is no evidence of any threats to her physical wellbeing or harm. She does have a strong obsessive

preoccupation with these events and with these conflicts, which has come to dominate her existence and is causing her significant distress. In my opinion, the events of May 15, 2019, did not materially alter what was clearly a preexisting condition and preexisting conflict which had gone untreated prior to that time.

I reserve the right to alter this opinion if new information is provided to me. Thank you for the opportunity to evaluate this patient.

Sincerely,

Henry M. Storper, MD
Psychiatry, Board Certified
License number: ME25917