# UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF FLORIDA
www.flsb.uscourts.gov

In Re:    Case Number: 17-20358-LMI
Chapter 13

JOSUE CEPERO and
LETICIA CEPERO

                Debtor(s)    /

## MARGLLI GALLEGO and HAMMOCKS COMMUNITY ASSOCIATIONS' RESPONSE TO DEBTORS' CLOSING ARGUMENT ON ORDER ON SANCTIONS AND SETTING FURTHER EVIDENTIARY HEARING (D.E. 411)

COMES NOW, Marglli Gallego (hereinafter "Gallego") and Hammocks Community Association (hereinafter "Association"), by and through the undersigned, and hereby submit this Response to Debtors' Closing Argument on Order on Sanctions and Setting Further Evidentiary Hearing (D.E. 411), and as grounds hereby states as follows:

### I. Procedural Background

1. On December 30, 2021 this Court held an evidentiary hearing "to hear evidence on emotional distress damages and the ability of Ms. Gallego and the Association to pay punitive damages." *(ECF 339, p. 11)*

2. At the December 30, 2021 hearing, this Court Ordered that that all parties submit closing arguments by February 11, 2022 and for the responses to the closing arguments to be due two weeks later on February 25, 2022. *(Tr. at 497:18 – 498:24).*

3. On January 24, 2022, a hearing was held on Debtors' Motion for Contempt and Other Relief (ECF 398). During that hearing, Debtors' counsel informed this Court that there were delays in obtaining the transcript for the December 30, 2021 and requested an additional seven days to prepare the above-mentioned closing argument.

4. The undersigned agreed to the extension and during the hearing, this Court extended the deadlines for the closing argument until February 18, 2022.

5. On March 1, 2022, Debtors' counsel filed their closing argument with this Court (ECF

411).

6. Debtors' closing argument mischaracterizes evidence and asks the Court to make illogical deductions to overcome the fact that they have not met their burden to prove by clear and convincing evidence all the elements seeking damages for emotional distress and for attaining punitive damages.

7. For the reasons stated in Respondents' Closing Argument and the foregoing, Respondents believe that Debtors are not entitled to damages for emotional distress or for punitive damages.

## II.  Conclusions of Fact

### A.  Emotional Distress

8. In their closing argument, the Debtors mischaracterize testimony by falsely stating that "Respondent's expert conceded that Leticia Cepero sustained significant emotional distress as a direct result of the May 15, 2019 incident" (ECF 411, pg. 4).

9. In an attempt to camouflage this mischaracterization, they state that "Dr. Henry Storper conceded that Leticia Cepero sustained significant emotional distress, and that there was a causal connection between her significant emotional distress and the May 15, 2019 incident."  (ECF 411, pg. 4).

10. Dr. Storper explicitly stated when asked, "And based on your medical—I'm sorry—mental status exam and your examination of Ms. Cepero's records, do you believe the incident that happened on May of 2019 exacerbated or caused her present emotional condition, and causes her emotional distress?"  Answer "I do not."  (Tr. at 459:21 – 460:2).

11. Further, when asked "[a]s we sit her today, do you believe the event of May 15, 2019 caused Ms. Cepero emotional distress?" Answer "I think she had an acute situational reaction, but she had already had preexisting issues and conflicts the same.  I think that

      the problem with Ms. Cepero is that she had a variety of symptoms which had been inadequately treated, in part due to the patient's lack of cooperation with accepting proper care." (Tr. at 460:19 – 461:3).

12. Debtors' counsel also attempts to overcome the shortcoming of their case by hoping this Court does not notice that Josue Cepero explicitly stated that his wife's behavioral issues started four years ago, in 2017. (ECF 411, Page 8)(quoting Tr. at 488:11 – 489:5).

13. Debtors' closing argument further states that the "medical records admitted into evidence are replete with proof that Leticia Cepero sustained significant emotional distress as a result of the Respondents' (the contemptors) acts including the May 15, 2019 incident." (ECF 411, Pgs. 5-6). However, Debtors failed to cite even one sentence of the medical records that evidenced this proof. See also, Para. 30 -34 of Respondents' closing argument (ECF 407).

14. In fact, not one of the Debtors' medical providers stated that the events on May 15, 2019, nor the lawsuit of November 2020 was the cause of the psychological condition(s) of the Debtors.

15. Since the record is devoid of any evidence that the event on May 15, 2019, and/or the filing of the lawsuit on November 2020 was a direct cause of the "emotional distress" claimed by Debtors; Debtors' counsel requested that this Court infer severe emotional distress by observing the "demeanor and state of Leticia Cepero during her testimony." (ECF 411, Para. E, Page 10).

16. Debtors' counsel requested that this Court infer that Ms. Cepero is suffering from severe emotional distress from the May 15, 2019 incident because "one is hard-pressed to imagine how a person, suffering from an obsessive fear of continued persecution, would not suffer significant emotional distress from the May 15, 2019 incident after a Court entered two separate Orders forbidding further contact." (ECF 411, Page 11).

17. When arguing that Josue Cepero also suffered severe emotional distress, Debtors' counsel also requests that this Court infer significant emotional distress from the May 15, 2019 incident even though none of the medical records come to that conclusion. (ECF 411, Pg. 14).

18. Debtors' boldly ask this Court to award them damages in excess of $1,000,000.00 because "[s]uch a demand is not unreasonable under the circumstances." (ECF 411, Page 15). It is unclear as to the legal and/or factual basis that Debtors' make this request.

19. Debtors' argument that they are entitled to damages for emotional distress is entirely based on conjecture and illogical inferences. It is not supported by the evidence and should be denied.

   B.    Punitive damages

20. While it is conceded that Hammocks Community Association, Inc. does have the ability to pay punitive damages, Respondents' have made it clear that the association was not involved in the May 15, 2019 incident and had no knowledge of the incident until after it happened. See, Respondents' closing argument (ECF 407).

21. Debtors ask that this Court give an "adverse inference" based on Marglli Gallego's failure to testify and the statement of her criminal attorney that had she testified she would have pled the Fifth Amendment. (ECF 411, Pg. 17).

22. Debtors also fail to mention that Ms. Gallego had also informed the Court that she was sick with Covid and had not been served with a subpoena. (See, ECF 400 denying Debtors' Motion for Contempt against Marglli Gallego for not appearing at trial whereby this Court censured Debtors' counsel for not having subpoenaed Ms. Gallego in a timely fashion.)

23. Respondents believe that punitive damages are not appropriate against Hammocks

        Community Association, Inc. and that a "adverse inference" against Marglli Gallego is unreasonable based upon the failure of Debtors' counsel to effectuate proper service of a subpoena prior to trial.

24. In support of their argument for punitive damages, Debtors bring up a 2017 lawsuit against the Debtors and argue that there are multiple violations by Respondents that include a subsequent 2020 lawsuit and the May 15, 2019 incident. Debtors further cite that the videos they submitted into evidence are proof of continuing violations by Respondents.

25. One video shows the Debtors' next door neighbors cutting trees on their property with the police present, the second video shows a member of the association walking to the Debtors' door to place a letter on the door, and the third video shows a van driving by the Debtors' residence with some background noise. (See, Debtors' Ex. 13, 14, & 15).

26. The Debtors' believe that these videos show that the association is persecuting them. (See, Debtors' Closing Argument).

27. What these videos actually demonstrate is that there is more to the situation between the debtors and the respondents than is apparently visible to the outside observer. They demonstrate that as Dr. Storper stated that there are psychological "obsessive ruminations" by the Debtors that are affecting the relationship between the debtors and respondents. (See Dr. Storper's testimony at Tr. At 462:4-14, Q:" Would a person who suffers from excessive ruminations have problems with reference to perception of events? Would that alter perception?  A: The Answer is, it can alter perception. Q: In what way?  A: Well, it can make you distort the reality of your existence.  If you think someone is going to harm you, then you may not be very friendly to the when you see them, and then, of course, they have a response to that.  It can alter your behavior.  It depends on the particular rumination.")

28.     As a result, the Debtors view anything that occurs to them to be a result of some far-reaching conspiracy by Marglli Gallego and/or the association.

29.     For the reasons stated in Respondents' closing argument and the foregoing, Respondents believe that punitive damages would be inappropriate in this case.

CERTIFICATE OF SERVICE

I HEREBY CERTIFY that I am admitted to the Bar of the United States District Court for the Southern District of Florida and I am in compliance with the additional qualifications to practice in this Court set forth in Local Rule 2090-1(A) and that a true and correct copy of the foregoing was transmitted to the parties listed below via electronic delivery on this 10th day of March 2021:

Michael J. Brooks, Esq. on behalf of Debtors; pleadings@bankruptcynow.com, mbrooks@bankruptcynow.com;brooks.michaelr100502@notify.bestcase.com

Nancy K. Neidich
e2c8f01@ch13miami.com, ecf2@ch13miami.com

Office of the US Trustee
USTPRegion21.MM.ECF@usdoj.gov

/s/ Miguel Parlade
Miguel Parlade, Esq.
Fla. Bar. 388068
Attorney for Marglli Gallego and
Hammock Community Association
P.O. Box 771747
Miami, FL  33177
(305) 235-9040