UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA

IN RE:                                                    CASE NO. 17-20358-BKC-LMI

JOSUE CEPERO and LETICIA                                  Chapter 13
CEPERO,

           Debtors.

_____/

### THE HONORALE DAVID M. GERSTEN (RETIRED), COURT-APPOINTED RECEIVER FOR THE HAMMOCKS COMMUNITY ASSOCIATION INC.'S SUPPLEMENT TO MOTION FOR RELIEF FROM: 1) ORDERS FINDING LIABILITY AND AWARDING DAMAGES [D.E. #328, #339, #477, #480]; AND, 2) FINAL JUDGMENT [D.E. #521]

The Honorable David M. Gersten (Retired), the court-appointed Receiver for the Hammocks Community Association Incorporated (the "Receiver"), hereby files his Supplement to his January 20, 2023 Motion for Relief from: 1) Orders of this Court finding liability and awarding damages against the Hammocks Community Association Inc. [D.E. #328, #339, #477, #480]; and, 2) this Court's September 14, 2022 Final Judgment [D.E. #521] (the "Motion for Relief"), and, in support thereof, states as follows:

**I.**
**PREFACE**

Since the filing of his Motion for Relief, the Receiver has obtained **new, compelling evidence of the participation of at least one of the Debtors in the fraud** perpetrated upon the Hammocks Community Association Incorporated (the "Association") by former President Marglli Gallego ("Gallego"). As it turns out, **Debtor Josue Cepero (through his independent company) was partners with Gallego**: Mr. Cepero paid Gallego **kickbacks** in exchange for Gallego agreeing that Mr. Cepero (through his company) could provide electrician services to the Association. Naturally, both of the Debtors (husband and wife) financially benefitted from that

arrangement.  To say that the Debtors (homeowners of the Association) come before this Court with unclean hands – and that this new evidence presents a "reason that justifies relief" – is an understatement.

This new evidence further supports the Receiver's request for this Court to relieve the Association from this Court's **pre-receivership** Final Judgment against the Association and Gallego pursuant to Rules 60(b)(2) and (6) of the Federal Rules of Civil Procedure.

That Final Judgment is based upon Gallego's alleged harassment of the Debtors, which the evidence indicates was perpetrated by Gallego in furtherance of her fraud.  It is difficult to imagine a more perverse – and unjust – result than further depleting the Association's coffers as a direct result of Gallego's misconduct and require the Association to pay homeowners who were involved in (and financially benefitted) from Gallego's misappropriation of Association funds.

## II.
## THE NEW EVIDENCE

### A.
### Who Are Ana Danton and Donald Kearns?

As discussed in the Receiver's Motion for Relief, in April 2022, homeowner Ana Danton ("Danton") filed her Petition for Appointment of Receiver and Injunctive Relief in the case styled *Ana Danton, individually and for the use and benefit of other property owners within the Hammocks Community Association Incorporated v. Hammocks Community Association Incorporated*, Case No. 2022-007798-CA-01, pending in the Circuit Court of the Eleventh Judicial Circuit in and for Miami-Dade County, Florida, which is presided over by Judge Beatrice Butchko. Danton sought the appointment of a receiver over the Association due to fraudulent conduct by the prior Board.  As a result, on November 17, 2022, the Receiver was appointed.

Upon appointing the Receiver, Judge Butchko established a six-person Advisory Committee to assist the Receiver. Two (2) of the members of that Committee are Danton and homeowner Donald Kearns ("Kearns"). *See* Affidavit of Ana Danton ("Danton Aff.), attached as **Exhibit A**, ¶5; *see also* Affidavit of Donald Kearns ("Kearns Aff."), attached as **Exhibit B**, ¶3.

**B.**
**<u>The February 2023 Affidavits</u>**

As set forth in their attached Affidavits, Danton and Kearns only recently learned of this Court's Final Judgment against the Association in favor of the Debtors. *See* Danton Aff., ¶8; *see also* Kearns Aff., ¶6. Not surprisingly, that Judgment was not disclosed to the homeowners by either Gallego or the Board in place immediately prior to the Receiver being appointed, which Board continued to be infested with Gallego's accomplices after Gallego was removed from the Board following her first Association-related arrest in April 2021.

Based upon their knowledge of the Debtors' relationship with Gallego, and their "shock" upon learning about the Debtors' efforts to collect on the Final Judgment from the Association, Danton and Kearns could not sit idly by and let that Final Judgment stand. *See* Danton Aff., ¶12; *see also* Kearns Aff., ¶9.

**i.**
**<u>Danton's Affidavit</u>**

As attested to by Danton, she first met the Debtors during a meeting in their home to, ironically enough, discuss the homeowners' concerns about the misconduct of Gallego and her cohorts, including their misappropriation of Association monies and harassment of homeowners. *See* Danton Aff., ¶9. Surprisingly, during that meeting the Debtors told Danton that Mr. Cepero had actually taken part in Gallego's fraudulent scheme to use the Association as her personal piggy bank. *Id.* at ¶10.

3

More particularly, Gallego and Mr. Cepero agreed that: 1) Mr. Cepero would be provided with the lucrative opportunity to provide electrician services to the Association, through his independent company; and, 2) in exchange for Gallego allowing him to do so, Mr. Cepero would pay kickbacks to Gallego (*i.e.*, a percentage of the monies paid by the Association to Mr. Cepero's company for those purported services). *Id.*

Mr. Cepero and Gallego's scheme eventually came to an end once Gallego began demanding a larger piece of the pie. *Id.* at ¶11. At that point – and after Mr. Cepero had made numerous improper kickback payments to Gallego – the kickback payments stopped. *Id.*

**ii.**
**Kearns' Affidavit**

As attested to by Kearns, he had a similar conversation with the Debtors. Although not at the aforementioned meeting with the Debtors and Danton, the Debtors also explicitly told Kearns about Mr. Cepero's assistance in Gallego's misappropriation of Association funds.

In 2017, the Debtors approached Kearns to apologize for certain slanderous statements that they had made about him. *See* Kearns Aff., ¶7. During that conversation, the Debtors also advised Kearns of what they had advised Danton, *i.e.*, that: 1) Gallego and Mr. Cepero agreed that Mr. Cepero (through his company) would be permitted to provide electrician services to the Association; and, 2) as a *quid pro quo*, Mr. Cepero would pay kickbacks to Gallego. *Id.*

As they had advised Danton, the Debtors also advised Kearns that the kickback scheme ceased upon Gallego demanding more money from Mr. Cepero (and after numerous kickback payments had already been made). *Id.* at ¶8.

### III.
### <u>MEMORANDUM OF LAW</u>

### 1.
### The Debtors Knew That the Association was an "Evil Zombie" of Gallego:
### <u>In Fact, They Financially Benefitted From Gallego's Abuse of the Association</u>

As discussed in the Motion for Relief, when a principal improperly utilizes a corporation in furtherance of a fraud designed for the principal's personal interests the corporation "is a mere 'robotic tool' or 'evil zombie' of the principal" and, upon the appointment of a receiver, "the corporation is freed from [the principal's] spell and returned to good citizenship." *Freeman v. Dean Witter Reynolds, Inc.*, 865 So. 2d 543, 550, 552 (Fla. 2d DCA 2003) (citing *Scholes v. Lehmann*, 56 F.3d 750, 754 (7th Cir. 1995)). Similarly, if an "agent's misconduct is calculated to benefit the agent and harms the corporation, the agent has forsaken the corporation and acts only for himself" and "the agent's misconduct is not imputed to the principal." *O'Halloran v. PricewaterhouseCoopers LLP*, 969 So. 2d 1039, 1045 (Fla. 2d DCA 2007).

Whether under a theory of *respondeat superior* or direct employer liability (the latter of which serves as the basis for this Court's Final Judgment against the Association), for an employer to be held liable for the conduct of a managing agent the agent's conduct must be "within the scope of his or her employment" and, as such, must be "'activated at least in part by a purpose to serve the [employer].'" *Barrows v. Truly Nolan of America, Inc.*, 2005 WL 8159431, *4 (M.D. Fla. 2005) (citing *Schropp v. Crown Eurocars, Inc.*, 654 So. 2d 1158 (Fla. 1995) and quoting *Sussman v. Fla. East Coast Properties, Inc.*, 557 So. 2d 74, 75-76 (Fla. 3d DCA 1990)); *see also Southern-Owners Ins. Co. v. Warren*, 2017 WL 2889693, *4 (M.D. Fla. 2017) ("[S]ince the owner's actions were committed within the scope of his employment, the [corporation] could be held liable for the damage caused by his actions.").

5

The newly-discovered evidence attested to by Danton and Kearns – which could not have come to light prior to the Receivership, as the Final Judgment was not disclosed to the homeowners by Gallego and her accomplices in the prior Board – is quite clear:  at all material times, the Debtors were well aware that Gallego: 1) was improperly utilizing the Association in furtherance of her fraud; 2) had "forsaken" the Association; and, 3) was acting only for herself.  Given this knowledge, the Debtors cannot credibly contest that: 1) Gallego's misconduct underlying the Final Judgment was perpetrated in furtherance of her own interests, not the interests of the Association; and, 2) by virtue of the Receiver's appointment, the Association was "cleansed" of any liability for that self-interested misconduct and, as a result, the Final Judgment.  *See Perlman v. American Express Centurion Bank*, 2020 WL 10181895, *4 (S.D. Fla. 2020) ("[O]nce [the principal] was removed and Plaintiff appointed Receiver, the Receivership Entities were 'cleansed' [and] deemed separate entities in the eyes of the law . . . .").

Not only were the Debtors aware of Gallego's self-interested misconduct, Mr. Cepero took it a step further by enabling Gallego's fraud to further the Debtors' own financial gain, paying Gallego kickbacks in exchange for a lucrative contract to purportedly provide electrician services to the Association.  It is unknown at this point whether Mr. Cepero's company even performed the services for which it was paid.  Certainly, however, the Association was overbilled for those purported services for, at the very least, the kickbacks paid to Gallego that must have been baked into the price charged to the Association.

Fact: Gallego and the Debtors each improperly used the Association as a means to their own financial ends.  Despite that, the Debtors come before this Court and attempt to do so again by enforcing against the Association a judgment directly arising from their cohort, Gallego's clearly self-interested misconduct.

In fact, the shoe should be on the other foot.  Indeed, not only should the Association be relieved of any liability to the Debtors for the Final Judgment, but also the Association may have a claim against Mr. Cepero and his company for a fraudulent transfer, *i.e.*, the monies paid by the Association to Mr. Cepero for purported electrician services that he, in turn, paid to Gallego as kickbacks as Gallego's "cut" of the scheme.  *See Sallah ex rel. MRT LLC v. Worldwide Clearing LLC,* 860 F. Supp. 2d 1329, 1334 (S.D. Fla. 2011) ("After a corporation, which was used by its principals to defraud investors, has been 'cleansed' through receivership the corporation has viable claims against the principals **or the recipients of fraudulent transfers** of corporate funds to recover assets rightfully belonging to the corporation and taken prior to the receivership.") (emphasis added).

Accordingly, and in addition to the reasons set forth in the Receiver's Motion for Relief, this Court should relieve the Association from any liability to the Debtors pursuant to Rule 60(b)(2) of the Federal Rules of Civil Procedure based upon the newly-acquired evidence set forth in Danton's and Kearns' respective Affidavits.

**2.**
**The Debtors' Collusive Relationship with Gallego Presents**
**a Textbook Example of a "Reason That Justifies Relief" Under Rule 60(b)(6)**

Regardless of the novelty of the additional evidence now brought before this Court, the nature of that evidence is loud and clear: It would be a perversion of justice if the Debtors were allowed to further profit from Gallego's misdeeds by enforcing the Final Judgment against the Association.

The pre-receivership victimization of the Association's homeowners (including Danton and Kearns) is one thing.  The arrests of Gallego and her crew, together with Judge Butchko's appointment of the Receivership, should have ensured that the homeowners would not be further

exploited by the prior regime.  However, to allow that abuse to continue – at the hands of homeowners who colluded with Gallego, no less – would truly be adding insult to injury.

Whether Gallego's misconduct underlying the Final Judgment was perpetrated against the Debtors in retaliation for Mr. Cepero ceasing (at some point) the improper kickbacks or simply to encourage the Debtors not to report Gallego's misconduct makes little difference.  Clearly, that misconduct was committed in furtherance of Gallego's self-interests, not the Association's interests.

Without a doubt, Mr. Cepero's kickback scheme with Gallego (from which both of the Debtors financially benefitted) presents this Court with one of those "unusual and extreme situations where principles of equity mandate relief" under Rule 60(b)(6).  *See In re: Ferro Corp. Derivative Litigation*, 511 F.3d 611, 623 (6th Cir. 2008) (quoting *Blue Diamond Coal Co. v. Trs. of the UMWA Combined Benefit Fund*, 249 F.3d 519, 524 (6th Cir. 2001)).

WHEREFORE, the Honorable David M. Gersten (Retired), as Court-appointed Receiver of the Hammocks Community Association Incorporated, respectfully requests that the Court: (1) enter a preliminary Order stating that it would grant the Receiver's Motion for Relief if the District Court remands to this Court to fully consider same or that the Receiver's Motion for Relief raises a substantial issue; (2) if the District Court then remands to this Court, enter an Order granting the Receiver's Motion for Relief and relieving the Association from any liability to the Debtors under the Orders and/or the Final  Judgment; and, (3) grant such further relief as the Court deems just and proper.

Respectfully submitted this 17th day of March, 2023.

DAMIAN | VALORI | CULMO
*Counsel for Court-Appointed Receiver*
*The Honorable David M. Gersten (Retired)*
1000 Brickell Avenue, Suite 1020
Miami, Florida 33131
Telephone: (305) 371-3960
Facsimile: (305) 371-3965
mdamian@dvllp.com
kmurena@dvllp.com
rlandy@dvllp.com
jserna@dvllp.com

By: *s/  Kenneth Dante Murena*
    Kenneth Dante Murena, Esq.
     Florida Bar No. 0147486
    Melanie E. Damian, Esq.
     Florida Bar No. 0099392
    Russell Landy, Esq.
     Florida Bar No. 0044417

and

GORDON REES SCULLY MANSUKHANI LLP
*Counsel for Court-Appointed Receiver*
*The Honorable David M. Gersten (Retired)*
100 SE 2nd Street, Suite 3900
Miami, Florida 33131
Telephone: (305) 428-5300
Facsimile:  (877) 634-7245
ethompson@grsm.com
mbperez@grsm.com

By: *s/  Eric R. Thompson*
    Eric R. Thompson, Esq.
     Florida Bar No. 888931

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on March 17, 2023, I electronically filed the foregoing with the Clerk of Court by using the CM/ECF system, which will send a notice of electronic filing to all attorneys of record.

 <u>s/  *Kenneth Dante Murena*   </u>
Kenneth Dante Murena, Esq.
Florida Bar No. 0147486
